**262**

UNITED STATES, Appellee,

v.

David P. BUCKLEY, Aviation Antisubmarine Warfare Operator Second Class, U.S. Navy, Appellant.

No. 66,374.
NMCM 90 0462.

U.S. Court of Military Appeals.

Argued May 5, 1992.

Decided Sept. 24, 1992.

For Appellant: *Captain Dwight H. Sullivan*, USMC (argued).

For Appellee: *Lieutenant J.C. Foster*, JAGC, USNR (argued); *Colonel T.G. Hess*, USMC (on brief); *Commander Thomas W. Osborne*, JAGC, USN.

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial consisting of officer members at the Naval Legal Service Office, Naval Air Station (NAS) Memphis, Millington, Tennessee.[1] Contrary to his pleas, he was found guilty of violating Articles 120 (carnal knowledge with victim B[2] and rape of victim A) and 134 (obstruction of justice and communicating a threat), Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively.

It is undisputed that victim A, a 20-year-old female Navy Airman [Petty Officer Third Class (E–4)], went to the enlisted club on board the NAS Memphis, on the night of March 24, 1989, with a friend. Upon entering the club, she greeted and approached an acquaintance, appellant. She then joined his group in their consump-

---

1. Appellant was sentenced to 10 years' confinement, forfeiture of $300 pay per month for 120 months, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the findings and the sentence except for reducing confinement and the period of forfeitures from 10 to 2 years and changing the discharge to a bad-conduct discharge. The Court of Military Review affirmed the findings and sentence as approved below in an unpublished opinion.

2. The carnal-knowledge charge involved intercourse with victim B, a 14-year-old civilian girl. On September 16, 1988, victim B was drinking with friends. A stranger to victim B, appellant, joined this group. Later, he took the intoxicated victim B to his barracks where she awoke to find him engaged in sexual intercourse with her. Thereafter, she did not leave the room or report it to the authorities. The conviction of this charge was discussed in the opinion below.

tion of several pitchers of beer. During the evening, she became intoxicated and danced with many men, possibly including appellant. At the end of the evening, appellant gave her a ride to her barracks. While in the barracks parking lot, they discussed appellant's fishing trip of the next day and whether she might join the excursion. Furthermore, it was decided that she would spend the night at appellant's barracks in the extra rack. Once in the room, the victim voluntarily climbed onto the bed, removed her shoes, and allowed appellant to massage her shoulders. From this point, two different stories emerged as to what happened.

Appellant's version is as follows:

While dancing with appellant, the victim seductively pressed her body against his and made sexual advances. Even at the club, she kissed him and put her arm around him. These sexual advances progressed in the parking lot of her barracks as they kissed and fondled one another. She then asked if she could sleep at his barracks, because she knew he did not have a roommate. Additionally, appellant insisted that she requested the massage which led to her removing her clothes and her full consent to the three occurrences of sexual intercourse. When she left the next morning, she kissed him goodbye.

Disagreeing with appellant's statements, the victim maintains that the incidents were quite different:

She states that she never made any sexual advances in regard to appellant, did not remove her clothes, and never consented to having sexual relations with appellant. Though she did not request the massage, she did enjoy it. The combination of the massage and the alcohol put her to sleep. Later, she was jarred to consciousness by appellant's penetrating her from behind while she lay on her stomach. Feeling shocked and drunk, she pushed appellant away and went into the bathroom. When she returned to the bedroom, she wrapped herself in a blanket and confronted appellant about what he had done. He apologized and asserted that he thought she had been awake, then he went to the other empty rack. In her drunken and confused state, she curled up in the fetal position and turned towards the wall. Twice later, appellant attempted to engage in sexual intercourse with her to which she responded "no". Appellant finally gave up and returned to his rack to sleep. In the morning, she walked to her barracks without going fishing with appellant and had no further physical contact with him.

The next morning, March 25, the victim told her classmate about the incident. On March 27, a Monday afternoon, she reported the occurrence to the authorities; first to her instructors, then to NAS security Investigator Melenbacher. In her first statement to NAS security, she lied by stating that she had left the room after having been raped by appellant; however, she had actually remained in the room. The next week, about Wednesday or Thursday, she admitted to the Naval Investigative Service that she had initially lied.

We are called upon to decide whether this evidence "reasonably raised" the affirmative defense of "honest and reasonable mistake of fact." *United States v. Taylor*, 26 MJ 127, 128 (CMA 1988); *United States v. Carr*, 18 MJ 297 (CMA 1984); *see also* para. 45, Part IV and RCM 916(j), Manual for Courts-Martial, United States, 1984.[3] If it did, the military judge was required to give an instruction as to the elements of that defense, *sua sponte*. 18 MJ at 302.

On initial review of the case, the Court of Military Review concluded that

> THE AFFIRMATIVE DEFENSE OF MISTAKE OF FACT WHERE AN ALLEGED RAPE VICTIM VOLUNTARILY ENTERED THE ACCUSED'S ROOM, CLIMBED ONTO A BED, AND ALLOWED THE ACCUSED TO MASSAGE HER SHOULDERS.

---

3. The granted issue is:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED BY RULING THAT THE MILITARY JUDGE WAS NOT REQUIRED TO *SUA SPONTE* INSTRUCT THE MEMBERS CONCERNING

the defense of mistake of fact was [not] raised by the evidence. There were only two possible versions of what happened to Victim A, in the barracks room, both were presented to the members. The Victim A testified that appellant raped her as she slept. Appellant maintained that he engaged in consensual sexual intercourse with Victim A on three separate occasions.... If the members believed appellant's version, the victim consented three times. There was no middle ground and no evidence that appellant received a "mixed message" of consent or non-consent.

Unpub. op. at 3.

Apparently, trial defense counsel agreed, for although he argued vigorously for a mistake-of-fact defense as to the age of the second victim, he did not request a like instruction as to Victim A.[4] In any event, we agree with the Court of Military Review that the defense of "honest and reasonable mistake of fact" was not "reasonably raised" by the evidence. "[F]rom our reading of the record and in view of the absence of any defense contention at trial that there was a reasonable mistake of fact and the absence of any request for instructions thereon, we are convinced that this defense was not raised at trial." *United States v. Peel*, 29 MJ 235, 242 (CMA 1989), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 731, 107 L.Ed.2d 750 (1990).

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.[5]

Judge CRAWFORD concurs.

SULLIVAN, Chief Judge (concurring with reservation):

I concur in the principal opinion, except for footnote 5, which I do not join.

GIERKE, Judge (dissenting):

In this case the victim testified on direct examination that she awakened to find appellant having intercourse with her. She pushed him away, went to the bathroom, and then "confronted him with what he had done." According to the victim, appellant responded, "I'm sorry, I thought you were awake." When the victim was asked if she thought appellant was a threat, she responded, "I was scared by what had happened, and nervous he had given up so easy, because it didn't make sense to me, but I didn't feel in any danger, sir."

4. Defense counsel used the mistake-of-fact defense in regard to victim B to show appellant's misunderstanding of her exact age to eliminate the charge of wrongfully supplying alcohol to a minor. Art. 134, Uniform Code of Military Justice, 10 USC § 934. Thus, this counsel knew the intricacies of mistake of fact.

5. This footnote is the author's personal observation and not part of the principal opinion. The colorful dissent of my wise colleague, Judge Wiss, fails to consider that the evidence of record only presents the red of the spectrum or the blue, depending upon the eye of the factfinder. As a practical matter, it is up to the *defense* to create the hues which lie between the two extremes either through cross-examination or its own evidence. *The World Almanac and Book of Facts* 305 (1992) offers the following information about the "Colors of the Spectrum":

Color, an electromagnetic wave phenomenon, is a sensation produced through the excitation of the retina of the eye by rays of light. The colors of the spectrum may be produced by viewing a light beam refracted by passage through a prism, which breaks the light into its wave lengths.

Customarily, the primary colors of the spectrum are thought of as those 6 monochromatic colors that occupy relatively large areas of the spectrum: red, orange, yellow, green, blue, and violet. However, Sir Isaac Newton named a 7th, indigo, situated between blue and violet on the spectrum. Aubert estimated (1865) the solar spectrum to contain approximately 1,000 distinguishable hues of which according to Rood (1881) 2 million tints and shades can be distinguished; Luckiesh stated (1915) that 55 distinctly different hues have been seen in a single spectrum.

Many physicists recognize only 3 primary colors: red, yellow, and blue (Mayer, 1775); red, green, and violet (Thomas Young, 1801); red, green, and blue (Clerk Maxwell, 1860).

The color sensation of black is due to complete lack of stimulation of the retina, that of white to complete stimulation. The infra-red and ultra-violet rays, below the red (long) end of the spectrum and above the violet (short) end respectively, are invisible to the naked eye. Heat is the principal effect of the infra-

In my view the victim's testimony was sufficient to raise an issue whether appellant mistakenly thought that the victim was awake and consenting to his sexual advances, thereby requiring an instruction on the affirmative defense of mistake of fact. The military judge has an affirmative duty *sua sponte* to instruct on affirmative defenses raised by the evidence. An instruction on an affirmative defense is not waived by a mere failure to request it. *United States v. Taylor*, 26 MJ 127, 129 (CMA 1988). I disagree with Judge Cox's implication (35 MJ at 264 n. 5) that it is up to the defense to raise an affirmative defense. We have held that "the defense theory" of the case "is not dispositive in determining what affirmative defenses have been reasonably raised by the evidence." *Id.* at 131; *United States v. Steinruck*, 11 MJ 322, 324 (CMA 1981).

I also agree with Judge Wiss that the principal opinion's conclusion in this case invades the prerogative of the court members to decide, under proper instructions, what the truth is.

Accordingly, I dissent.

WISS, Judge (dissenting):

Just as a color spectrum does not have distinct points at which the colors sharply change but, instead, reflects shadings of one color into the next, superficially different views of the facts of a certain incident often do not stand in marked contrast but, instead, shade one into the other.

The factfinders in this case were presented with two versions of what happened between appellant and the complainant over the course of several hours in both public and private fora. The Court of Military Review and the majority of this Court see those versions as distinctly different, just as the colors on each extreme of a spectrum are distinctly different. I do not disagree.

The difficulty I have with the majority and with the court below is the failure of both to recognize the reasonable possibility that the factfinders might *fully* accept *neither*. As I view the evidence, the truth might be as appellant tells the story; or it might be as the complainant tells the story. But it also might be somewhere in between.[1]

Unfortunately, this case represents yet another instance in which the military judge, the Court of Military Review, and a majority of this Court are making judgments which, *ab initio*, are the responsibility and prerogative only of the members as factfinders. *See United States v. Rankins*, 34 MJ 326 (CMA 1992). I am unsure what motivates the reluctance of judges at all these levels to give an accused's case a fair hearing by letting the *members* decide on the evidence, under full and proper instructions, where the truth lies.[2] Whatever it is that motivates this judicial stinginess, I do not share it. *See id.* at 336–40 (Wiss, J., dissenting).

---

red rays and chemical action that of the ultra-violet rays.

1. As this Court recognized in another context in *United States v. Warren*, 13 MJ 278, 286 (CMA 1982), quoting the admonition offered in *United States v. Moore*, 484 F.2d 1284, 1287–88 (4th Cir.1973):

"[S]ome essential elements of proof of criminal conduct, such as knowledge, intent, malice, and premeditation are sometimes so subjective that testimony about them cannot be readily categorized as true or false. Judges must constantly bear in mind that neither they nor jurors are infallible."

2. As for Judge Cox's implication in footnote 5 that the evidence raising an affirmative defense *must* come from the *defense*, I know of no authority supporting that view. *Cf. United States v. Taylor*, 26 MJ 127, 131 (CMA 1988); *United States v. Steinruck*, 11 MJ 322, 324 (CMA 1981). Notwithstanding the introductory caveat in the particular sentence that this is true only "[a]s a practical matter," the majority's cold-shoulder response in the body of the opinion to the testimony of the complainant that, as Judge Gierke points out, does raise the defense, belies his implied willingness to consider other sources.