UNITED STATES, Appellee,

v.

Darryl W. JONES, Sergeant, U.S. Air Force, Appellant.

No. 97–0027.
Crim.App. No. 31646.

U.S. Court of Appeals for the Armed Forces.

Argued Jan. 12, 1998.

Decided Sept. 23, 1998.

For Appellant: *Colonel Douglas H. Kohrt* (argued); *Colonel David W. Madsen* and *Captain Michael L. McIntyre.*

For Appellee: *Colonel Brenda J. Hollis* (argued); *Major LeEllen Coacher.*

### Opinion of the Court

SULLIVAN, Judge:

During the spring of 1994, appellant was tried by a general court-martial composed of members at McClellan Air Force Base, California. Contrary to his pleas, he was found guilty of attempted rape, attempted carnal knowledge, sodomy, committing indecent acts upon a female under 16, and obstruction of justice, in violation of Articles 80, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 925, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 5 years, total forfeitures, and

reduction to E–1. The convening authority approved this sentence on April 24, 1995. The Court of Criminal Appeals set aside the finding of guilty to the attempted-carnal-knowledge charge on multiplicity grounds, reassessed the sentence, and affirmed the adjudged sentence on July 29, 1996.

This Court granted review on July 30, 1997, on the following issues of law raised by appellate defense counsel. He asks:

### I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DE-CLINING TO PERMIT TRIAL DE-FENSE COUNSEL TO CONDUCT CROSS–EXAMINATION OF THE VIC-TIM ON THE VICTIM'S ASSOCIA-TIONS WITH, PERCEPTIONS OF, AND BELIEF IN DEMONS, SPIRITS, AND OUIJA BOARDS AS RELEVANT MATTERS HAVING A TENDENCY TO MAKE THE VICTIM LESS CREDI-BLE.

### II

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING THAT THE MILITARY JUDGE DID NOT ERR BY FAILING TO PROVIDE A DEFENSE REQUEST-ED INSTRUCTION TO THE COURT MEMBERS OF APPELLANT'S HON-EST MISTAKE OF FACT AS TO THE CONSENT OF THE ALLEGED VICTIM TO THE CHARGE OF ATTEMPTED RAPE, WHEN IT HELD THAT IT WOULD NOT FIND ERROR BECAUSE APPELLANT HAD NOT TESTIFIED AND RAISED THE ISSUE HIMSELF.

We hold that error committed by the military judge in limiting the cross-examination of the alleged victim was harmless beyond a reasonable doubt. *See United States v. Menge*, 48 MJ 490 (1998); *see generally Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). We further hold that the military judge did not err in failing to give a defense-requested instruc-

tion on mistake of fact. *See United States v. Willis*, 41 MJ 435 (1995).

The prosecution presented, *inter alia*, direct evidence from the victim in this case to show appellant's guilt of the charged offenses of rape, carnal knowledge, sodomy, and committing indecent acts. The court below summarized her testimony as follows:

The victim in this case, KD, was a 14–year–old female who had spent many years in treatment for psychological problems and in various homes for troubled children. She testified that on 19 September 1993, she and a friend, RND, left their group home without permission. At the time KD was using a prescription antidepressant medicine, Elavil. KD had experienced flashbacks in the past of her father attacking her, and she experienced one of those flashbacks that day.

While KD and RND were walking, the appellant (a married, 30–year–old), who was in a vehicle with another individual named Bill, whistled and motioned for them to come to his car. He asked KD and RND their names and ages, and KD told him she was 14. The appellant offered KD and RND a ride to the park where they were headed, and they accepted. They stopped at a liquor store, and after the appellant asked them what they drank, the appellant bought Olde English 800, a type of beer. While at the park, the appellant started kissing KD, and after letting him kiss her once, KD told him that she "didn't want to" because she had a boyfriend. The appellant then asked, "Well, can't you make any room for me?" and KD said, "No ... because I love my boyfriend." KD drank a couple of cans of beer and they left the park and dropped off Bill and then RND.

KD remained with the appellant because he allowed her to drive behind the wheel instead of just shifting the gears of the car from the passenger seat, as she had been doing. The appellant stopped to purchase cigarettes, and KD smoked one. The appellant then picked up a friend named "Juan," and the three individuals proceeded to the appellant's dormitory dayroom on McClellan Air Force Base (AFB). Two other males were present in the dayroom.

KD and the appellant drank a liquor-based drink called a "Cisco," which made KD feel sick and "wasted," like she was "passing out." The appellant left to make a phone call in Juan's dormitory room, and when he finished, motioned for KD to come to the room. They went to the bedroom, and the appellant turned off the lights and began unbuttoning KD's pants. KD interrupted the appellant's amorous actions by twice going to the bathroom. She returned to the bedroom and the appellant, who was still there, began unbuttoning her pants again. He took off her bra, and then placed his mouth on her vagina and inserted his tongue. He also put his finger inside her vagina. KD testified that the appellant then tried to insert his penis, and she was "pushing him off" and saying, "no," while he was saying "come on." According to KD, "he went in about an inch," and she finally managed to push him off and told him that she wanted to go home. KD stated that she was not able to stop him from going in because, "I guess you'd say he's stronger than me." KD testified that when she attempted to make a phone call, the appellant slammed the receiver of the phone down so she was unable to make a call. The appellant then drove her to a parking lot across the street away from her group home and dropped her off. When she arrived at the door of the group home she passed out because she "was really drunk."

Unpub. op. at 2–3.

KD, the alleged victim, was the principal prosecution witness in this case. Defense counsel attempted to question KD about "her associations with, perceptions of, and belief in demons, spirits, and Ouija boards" for purposes of attacking her credibility, in particular her ability to perceive reality. Government counsel objected on grounds of relevance to the incident in question. After hearing the desired cross-examination testimony, the military judge denied the requested cross-examination, except with respect to the alleged victim's discussion of a "Ouija board" on the day of the offense.

The military judge initially rejected appellant's proffer on the basis of temporal relevance. He stated:

> MJ: [Pause.] I sustain the objection; I don't find any relevance whatsoever to these, not being a professional I'll term them psychotic, episodes that did not—there's been no showing that there was any of this occurring on the 19th of September during the time of the alleged incidents. I have admitted in and it has been brought before the members of a flashback that occurred prior to these incidents that has been allowed in. I see no relevance whatsoever to these continued episodes that you're alleging occurred at some time as early as six years old.

He later rejected it on an additional ground, as follows:

> MJ: Well, I—no. There's just no relevance whatsoever to any of this entire line of questioning that I have allowed you to develop on the record for—whatever appellate purpose you want to make of it is fine. It's there on the record, but it is totally irrelevant to any issue of fact or any issue before these members including the credibility of this witness.
>
> No, I'm not going to allow you to get into that area. Its entire intent [is] to discredit this witness, to—to shift the focus of these members from what occurred on the 19[th] of September 1993 to some perceived character flaw of this witness unrelated to the offenses themselves. It's just not going to be allowed.

## I

The first question before us is whether the military judge prejudicially erred in restricting the defense cross-examination of the alleged victim in this case, KD. *See United States v. Anderson*, 139 F.3d 291, 302–03 (1st Cir.1998); *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir.1983) ("discretionary authority" of trial court to limit scope of cross-examination "comes into play only after there has been permitted as a matter of right sufficient cross-examination"). In determining whether the constitutional minimum of cross-examination has been satisfied, or whether additional cross-examination should have been permitted as a matter of discretion, correct principles of law must be used by the judge. *See United States v. Garcia*, 44 MJ 27, 31 (1996) (constitutional error requires "exclusion of *material* or vital defense evidence"); *see also United States v. Travers*, 25 MJ 61, 63 (CMA 1987) (exercise of discretion must be controlled by correct principles of law). Here, the military judge's decision to prohibit the cross-examination of the prosecutrix in this case on her past perceptions of demons and spirits was based on an impermissibly narrow view of the law of testimonial impeachment. *See United States v. Pryce*, 938 F.2d 1343, 1345–46 (D.C.Cir.1991).

Mil.R.Evid. 607, Manual for Courts–Martial, United States, 1984, allows an accused at his court-martial to attack the credibility of a witness against him. *See generally United States v. Banker*, 15 MJ 207 (CMA 1983). This includes the right to question a witness about defects in his or her capacity to observe events, remember them, and communicate them to a court-martial. *See generally* 3A Wigmore, *Evidence* 931 (Chadbourn rev.1970); *see United States v. White*, 45 MJ 345, 348 (1996). A tendency to hallucinate, a history of doing so, or some mental illness conducive to hallucination are matters which may be properly explored on cross-examination, assuming some temporal relationship is established between the events observed and the observer's defect in observation, memory, or communication. *See United States v. Antone*, 981 F.2d 1059, 1062 (9th Cir.1992); *United States v. Butt*, 955 F.2d 77, 82–83 (1st Cir.1992); *United States v. Pryce, supra;* and *United States v. Jackson*, 863 F.Supp. 1462, 1465 (D.Kan. 1994). We conclude that the military judge erred to the extent that he conditioned cross-examination [1] on the defense's ability to show

---

1. The military judge signaled his overly restrictive approach to this defense cross-examination by asking defense counsel: "Have you—do you have any evidence whatsoever that she was summoning any of these people, Damien, Bloody Mary, and/or the Candy Man on the 19[th] of

that the alleged victim had these particular hallucinations at the exact time of the charged offenses. *Pryce, supra* at 1346 ("[h]allucinations in September are obviously relevant to a witness's ability to discern reality in December"); *United States v. Lindstrom,* 698 F.2d 1154, 1163 (11th Cir.1983); *United States v. Partin,* 493 F.2d 750, 764 (5th Cir.1974) (4 months before); *see generally United States v. Antone, supra* ("illness shortly before or during the period in which the events to which she testified occurred").

■ The military judge's erroneous restriction[2] of appellant's right to cross-examine his accuser, however, does not require reversal of his sex-offense convictions. In *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431, the Supreme Court said:

Accordingly, we hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis.. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, *whether the testimony was cumulative, the presence* or absence *of evidence corroborating* or contradicting *the testimony of the witness on material points, the extent of cross-examination otherwise permitted,* and, of course, the *overall strength of the prosecution's case. Cf. Harrington [v. California],* 395 U.S., [250] at 254, 89 S.Ct., [1726] at 1728 [23 L.Ed.2d 284 (1969)]; *Schneble v. Flori-*

*da,* 405 U.S., [427] at 432, 92 S.Ct., [1056] at 1059 [31 L.Ed.2d 340 (1972)].

(Emphasis added.) This same harmless-error rule can be applied in appellant's case. *See generally Menge, supra* at 491–92 (regardless of legal nature of error, conviction may be affirmed if error shown to be harmless beyond reasonable doubt).

Turning to appellant's record of trial, we initially note that the prosecution's case against him on the charges of attempted rape, sodomy, and indecent acts with a child under 16 was strong. KD, the alleged victim, testified to appellant's sexual misconduct and her testimony was substantially corroborated by appellant's own pretrial statements to several persons after the alleged offenses. *See United States v. Caldwell,* 88 F.3d 522, 525 (8th Cir.1996). While the prosecution's evidence did conflict on the question of penile penetration, appellant was found not guilty of rape, the only offense requiring proof of that fact. Thus, this was not a one-on-one swearing contest where the denied cross-examination might have tipped the balance in appellant's favor. *See Menge, supra* at 492 (two witnesses against one and denied impeachment limited to one).

Second, the defense was later allowed to introduce other evidence concerning KD's perception of the supernatural in order to attack her credibility. The military judge allowed the defense to cross-examine KD on whether she talked about "Ouija boards" on the day in question, a fact which she admitted. Moreover, the defense was allowed to introduce testimony from Airman Hunt in which he stated that, just prior to the charged offenses, "[s]he told me that she had played it [Ouija board] before, and that one time it told her to kill herself." *See United States v. Jackson,* 882 F.2d 1444, 1446–47 (9th Cir.1989) (cross-examination on participation in fraudulent schemes not allowed but participation in preparation of false financial

September while she was allegedly being assaulted by your client?" Moreover, the alleged victim suggested in her trial testimony that she continued to see those spirits. The record states: "DC: Okay. K[D], do you believe in demons? Wit: I know there are demons, but I don't—I refuse to follow them." .

2. The military judge's additional concern with respect to the defense's intended use of this evidence to impugn the alleged victim's moral character could have been easily handled with a limiting instruction. *See* Mil.R.Evid. 105 and *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

reports allowed). Finally, defense counsel was allowed to cross-examine her on her prior hospitalizations for psychiatric problems. Thus, "substantial substitute evidence" existed in this record to sufficiently present this particular credibility attack to the members. *See Menge, supra* at 492.

Third, the defense was allowed extensive cross-examination of the alleged victim, KD, on other matters relating to her credibility. Defense counsel exposed her lies to her group-therapy members about her experiences that day, her drinking blackouts, her sexually inconsistent conduct with appellant, her taking of antidepressant medication, her flashbacks of her father attacking her, particularly on the day in question, and her purported complaints of prior sexual molestation by her counselor and a police officer. Clearly, the members were provided an ample basis upon which to evaluate her overall credibility as a witness against appellant. *See Menge, supra* at 492–93; and *United States v. James,* 139 F.3d 709, 714 (9th Cir. 1998).

Finally, the defense theory of this case that the alleged victim had fantasized or lied about appellant's conduct would not have been perfected by the denied cross-examination testimony. The victim's testimony, as noted above, was corroborated by appellant's own post-offense statements, which were independently made to his friends and to a police investigating officer. While the alleged victim's testimony might be explained away by the denied cross-examination testimony, the testimony of appellant's friends and the investigating police officer reporting his admissions could not. In these circumstances, there was simply no reasonable possibility that the denied cross-examination would have changed the outcome of appellant's trial. *See Menge, supra* at 492–93.

II

The second granted issue in this case asks whether a defense-requested mistake-of-fact instruction was properly denied because appellant did not testify and raise this defense himself. The appellate court below said:

The appellant argues that the military judge erred by not providing an instruction to the court members on reasonable mistake of fact by the appellant regarding consent of the alleged victim as it relates to the charges of rape and attempted rape. The appellant contends that there was evidence that KD had kissed the appellant, went with him to the bedroom, and did not say "no" to oral sex. He asserts that this could be construed as consent to intercourse and therefore warranted the requested mistake of fact instruction.

* * *

We are unsympathetic to the appellant's argument. The military judge found "no evidence whatsoever raising the defense of mistake of fact ... as to rape, and/or the lesser included of attempt." *The appellant did not testify, and there is therefore no evidence that he was under a mistaken belief regarding the consent of KD, and if that mistaken belief was reasonable. We are unwilling to create a defense for the appellant by attributing thoughts to him via supposition.* The facts did not raise an affirmative defense, and the *military judge did not abuse his discretion* when he denied the appellant's request for a mistake of fact instruction. We reject this assignment of error.

Unpub. op. at 5–6 (emphasis added). We do not entirely agree with the lower court's discussion of this question of law.

 Whether an instruction on a possible defense is warranted in a particular case depends upon the legal requirements of that defense and the evidence in the record. If that evidence "reasonably raised" all the elements of an affirmative defense, "the military judge was required to give an instruction as to the elements of that defense, *sua sponte.*" *United States v. Buckley,* 35 MJ 262, 263 (CMA 1992). To the extent that the lower appellate court suggested that the military judge had discretion to instruct on this defense once reasonably raised, it erred. *Cf. United States v. Damatta–Olivera,* 37 MJ 474, 478 (CMA 1993) (only the form of a

specific defense-requested instruction is "discretionary" with judge).

■ Moreover, the appellate court below erred to the extent it possibly suggested that an accused must testify in order that a mistake-of-fact instruction be given. This is not the law, and we have never so held. *See* RCM 916(b), Manual, *supra* (1994 ed.) (once a "defense ... is placed in issue by some evidence"); *see also* Discussion ("A defense may be raised by evidence presented by the defense, the prosecution, or the court-martial."); RCM 920(e)(3); *United States v. Taylor*, 26 MJ 127, 131 (CMA 1988); *United States v. Steinruck*, 11 MJ 322, 324 (CMA 1981). Such a narrow view of the law on raising defenses at courts-martial, as relied on by the court below, is unacceptable.

■ Nevertheless, we conclude for the reasons stated in *Willis* that a defense mistake-of-fact instruction was not warranted in this case. There we said that

> a mistake-of-fact defense to a charge of rape requires that a mistake as to consent be both honest *and* reasonable. *See United States v. Langley*, 33 MJ 278. The testimony relied on by appellant tended to show objective circumstances upon which a reasonable person might rely to infer consent. However, they provided no insight as to whether appellant actually or subjectively did infer consent based on these circumstances. *See People v. Williams*, 4 Cal. 4th 354, 14 Cal.Rptr.2d 441, 841 P.2d 961, 967 (1992) (Third-party testimony of absence of screams or other sounds of struggle "sheds no light" on accused's state of mind).

41 MJ at 438.

■ In appellant's case, we note again that he was found not guilty of rape, so the effect of any instructional error on this charge is moot. As for his conviction for attempted rape, we are not persuaded that he was entitled to a mistake-of-fact instruction. The evidence he points to suggests the possibility of a *reasonable* mistake of fact as to consent. However, attempted rape is a specific-intent offense requiring proof of an *honest* mistake of fact. *See* RCM 916(j). We agree with the appellate court below that there was no evidence "whatsoever" that appellant actually believed that KD was consenting to sexual intercourse with him. On the contrary, in one of his pretrial statements, he acknowledged her resistance to his sexual advances. There, he asserted that KD "closed her legs too tightly and that he couldn't get in." In these circumstances, as in *Willis*, we find no instructional error.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

CRAWFORD, Judge (concurring in the result):

I disagree with the majority's rationale on both issues. As to Issue I, the judge did not abuse his discretion in preventing cross-examination of the child about her "associations with, perceptions of, and belief in demons, spirits, and Ouija boards." *See, e.g., United States v. Smith*, 77 F.3d 511, 516 (D.C.Cir. 1996); *United States v. Gonzalez–Sanchez*, 825 F.2d 572, 585–86 (1st Cir.1987). The judge found that these occurrences probably relate to "psychotic ... episodes" and "there's been no showing that ... any of th[ese] occurr[ed]" on the date of the alleged offenses. After the judge noted he was not a "professional," the defense did not make a proffer regarding how this evidence affects a witness' capacity to observe, remember, and recall.

As to Issue II, I would simply hold that, under the facts of this case, mistake of the fact was not raised. I would leave for another day the question whether the subjective prong of the mistake-of-fact defense can be raised without the accused testifying. *Cf. United States v. Willis*, 41 MJ 435 (1995); *United States v. True*, 41 MJ 424 (1995); *United States v. Greaves*, 40 MJ 432 (CMA 1994).