# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––

**No. ACM 40019 (rem)**

––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Chase M. THOMPSON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

––––––––––––––––

On Remand from
the United States Court of Appeals for the Armed Forces

Decided 18 May 2023

––––––––––––––––

*Military Judge:* Willie J. Babor.

*Sentence:* Sentence adjudged 30 September 2020 by GCM convened at Ramstein Air Base, Germany. Sentence entered by military judge on 13 November 2020: Dishonorable discharge, confinement for 12 months, and reduction to E-1.

*For Appellant:* Major David L. Bosner, USAF; Major Alexandra K. Fleszar, USAF; Major Alexander A. Navarro, USAF; R. Davis Younts, Esquire.

*For Appellee:* Colonel Naomi P. Dennis, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Cortland T. Boechler, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge ANNEXSTAD joined. Judge GRUEN filed a separate dissenting opinion.

––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

JOHNSON, Chief Judge:

This case is before us for the second time. On 30 September 2020, a general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of one specification of making a false official statement, one specification of sexual assault of a child who had attained the age of 12 but not attained the age of 16 years on divers occasions, and one specification of producing child pornography, in violation of Articles 107, 120b, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 920b, 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 12 months, and reduction to the grade of E-1. The convening authority approved the sentence in its entirety.

Appellant raised three issues when his case was originally appealed: (1) whether the evidence was legally and factually sufficient to support his convictions for sexual assault of a child and production of child pornography; (2) whether his sentence to 12 months of confinement was inappropriately severe; and (3) whether Appellant's requirement to register as a sex offender represented cruel and unusual punishment, or otherwise warranted sentence relief. This court found Appellant's conviction for production of child pornography was not factually sufficient, set aside the findings of guilty with regard to that charge and specification, and dismissed the charge and specification with prejudice. Having reassessed the sentence to the same sentence originally adjudged—a dishonorable discharge, confinement for 12 months, and reduction to the grade of E-1—we affirmed the remaining findings of guilty and the reassessed sentence. *United States v. Thompson*, No. ACM 40019, 2021 CCA LEXIS 641, *27 (A.F. Ct. Crim. App. 29 Nov. 2021) (unpub. op.), *rev'd*, 83 M.J. 1 (C.A.A.F. 2022).

_____

[1] The false official statement charge and its specification occurred prior to 1 January 2019; therefore, this charge falls under the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). The alleged offenses of sexual assault of a child and production of child pornography occurred after 1 January 2019; therefore, these charges and specifications fall under the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). All charges and specifications were referred to trial after 1 January 2019; accordingly, unless otherwise specified, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the 2019 *MCM*. *See* Exec. Order 13,825, §§ 3, 5, 83 Fed. Reg. 9889, 9889–90 (8 Mar. 2018). Appellant was also charged with five specifications of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920, related to another complainant; Appellant was acquitted of that charge and all five specifications. The false official statement charge stems from the investigation into the abusive sexual contact allegations; Appellant has not challenged the legal or factual sufficiency of this conviction.

The United States Court of Appeals for the Armed Forces (CAAF) found certain language in this court's opinion "create[d] at least 'an open question'" as to whether this court incorrectly analyzed the factual sufficiency of Appellant's conviction for sexual assault of a child. *United States v. Thompson*, 83 M.J. 1, 11 (C.A.A.F. 2022) (citation omitted). Accordingly, the CAAF set aside this court's opinion and returned the record of trial for remand to this court "for a new review under Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2018)." *Id.* at 11–12.

Appellant's case was re-docketed with this court, and Appellant submitted an assignment of error brief that solely addressed the issue of whether Appellant's conviction for sexual assault of a child is factually sufficient. The Government's answer brief is limited to the same issue. Because the CAAF set aside this court's prior decision in its entirety, and in light our requirement under Article 66(d)(1), UCMJ, to "affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved," for purposes of this opinion we have considered the full extent of all three issues Appellant raised in his original appeal. With regard to issue (3), we again find it warrants no discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). For the reasons stated in our earlier opinion, we again find Appellant's conviction for production of child pornography is not factually sufficient, and set aside the finding of guilty as to Charge IV and its Specification. *See Thompson*, unpub. op. at *18–22. The analysis below focuses on the legal and factual sufficiency of Appellant's conviction for sexual assault of a child. Finding no other errors that materially prejudiced Appellant's substantial rights, we affirm the findings of guilty as to sexual assault of a child and false official statement and the sentence, as reassessed.

## I. BACKGROUND

This court's prior opinion set forth the factual background of the case in some detail. *Id.* at *3–13. For purposes of this opinion we do not reiterate that background verbatim; nevertheless, in order to explain the sufficiency of the evidence underlying Appellant's conviction for sexual abuse of a child, we find it appropriate to summarize the relevant evidence introduced at trial.

In March 2019, Appellant was a 20-year-old Airman stationed at Aviano Air Base (AB), Italy. On or about 27 March 2019, Appellant met VP through a cell phone dating application. VP's profile on the application indicated she was 18 years old and a college student. In fact, VP was 15 years old and lived in an off-base house near Aviano AB with her stepfather, an active duty Air Force member, and her mother. VP was homeschooled and was left alone at home unsupervised during the day while she completed online coursework.

Appellant and VP quickly moved their communication to another social media application. Between 29 March 2019 and 30 May 2019, Appellant and VP exchanged 918 messages on this application. These messages indicate that on 30 March 2019, 5 April 2019, 11 April 2019, and 15 April 2019, Appellant went to VP's residence and engaged in sexual activity with her. VP's messages also claimed she was drinking alcohol while messaging Appellant, talked about relationships with other adult men, and suggested she had used edible marijuana products. The messages indicated that VP traveled to Germany and London for unknown periods of time between 15 April 2019 to 29 May 2019. Although Appellant and VP continued to communicate from 15 April 2019 through 29 May 2019, there is no indication they engaged in sexual activity during this timeframe. The messages do not mention or directly comment on VP's age.

On 15 May 2019, VP told Appellant she was dating someone new, and that he should do the same. Appellant responded by asking, "Who are you dating?" and "Is he atleast [sic] your own age[?]" However, Appellant and VP continued to communicate and appeared to mend the issues they were having with each other. They eventually made plans for Appellant to go to VP's residence on 30 May 2019.

On 29 May 2019, VP showed a friend, AV, a video on her cell phone of VP having sexual intercourse with a male. AV told her mother about the video. Agents from the Air Force Office of Special Investigations (AFOSI) received the information from AV about VP having sex with a male. Based on the information AV provided, agents were able to identify Appellant as the male in the video. On 30 May 2019, security forces investigators cooperating with the AFOSI went to VP's residence to conduct surveillance. The investigators observed Appellant had parked down the street from VP's residence. Text messages indicate Appellant arrived at VP's residence at 0735 and left later that morning. Agents photographed Appellant leaving the residence.

On the same day, 30 May 2019, AFOSI contacted VP's stepfather, Master Sergeant (MSgt) RH. MSgt RH agreed to obtain VP's cell phone. Later that day, MSgt RH and VP's mother confronted VP and demanded her phone. According to MSgt RH, VP became angry and started crying. When VP's mother tried to grab the phone, VP threw it on the ground to smash it. MSgt RH turned the phone over to the AFOSI. Agents also obtained a pair of VP's underwear; DNA analysis determined Appellant's semen was present on the underwear.

Forensic analysis of VP's phone retrieved multiple photographs of Appellant dated 11 April 2019, one photograph of Appellant dated 30 April 2019, and two videos of Appellant and VP in her bedroom. One of the videos depicted Appellant naked and VP in her underwear talking and kissing Appellant on her bed. The second video depicted Appellant and VP engaging in sexual

4

intercourse. On 30 April 2019, VP sent Appellant a message asking where "the dirty video" was; Appellant subsequently sent it to her via a social media application. The forensic examiner who analyzed VP's phone testified he could not determine the date these two videos were originally created.

Analysis of VP's phone also revealed multiple messages where she told other adult men that she was 18 years old, and one occasion where she told someone she was 16 years old. On multiple social media applications, VP indicated her age was 18 years; on another, her age was given as 16 years. An AFOSI agent testified he was "fairly certain" VP told him in an interview that she had told Appellant she was 16 years old.

At trial, the Government called Senior Airman (SrA) DN to testify about a conversation he had with VP. Sometime in April 2019, SrA DN met VP through the same dating application as Appellant. SrA DN testified VP listed her age as 18, and identified herself as a criminal justice major and a ballerina from Germany. SrA DN and VP moved their communication to another application, where VP told SrA DN she was actually 16 years old. SrA DN later found out that VP was younger than 16 and had lied about being in college. SrA DN confronted VP about her misrepresentations through messages, stating that she could get a lot of people in trouble. VP responded that SrA DN "wouldn't have been the first guy in the Air Force," that she had done things like this to in the past, that it was not illegal in Europe, and that she did not believe it was a big deal. SrA DN never met VP in person.

The Government also called two witnesses to testify about comments Appellant made after the AFOSI investigation began. Technical Sergeant (TSgt) LC overheard Appellant ask an Italian national the age of consent in Italy. When the Italian national answered that it was 14 years, Appellant responded that he would be "scot-free" because of what the age was, or words to that effect. TSgt LC did not provide an exact date for this conversation, but stated it happened in the summer of 2019 at a going-away gathering.

The Government also called Airman First Class (A1C) TM, a co-worker of Appellant's. A1C TM testified that he and Appellant were hanging out together on 23 June 2020. As A1C TM and Appellant drove together and then later at a bar, Appellant talked about "his case" and "that a certain woman said he did things he didn't do."[2] However, after Appellant had been drinking alcohol, as A1C TM drove them home Appellant "kept talking about an underaged woman and then he told [A1C TM] different variations of a story of it." A1C TM testified that Appellant said he "had met a girl that was -- he was continuing to

---

[2] These comments presumably related to the abusive sexual contact specifications for which Appellant was acquitted.

have intercourse and then he found out eventually that she was underaged and continued." A1C TM later added: "He told me three different stories[:] that it was a master sergeant's daughter, a German girl or woman[,] and an Italian girl." A1C TM did not recall Appellant mentioning the name or age of the person he was referring to, or what he meant by "underage."

Neither VP nor Appellant testified at the court-martial.

## II. DISCUSSION

### A. Legal and Factual Sufficiency of Sexual Assault of a Child

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). When examining the evidence in the light most favorable to the prosecution, "a rational factfinder[ ] could use his 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *United States v. Long*, 81 M.J. 362, 369 (C.A.A.F. 2021) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). An examination for legal sufficiency "involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (second alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2017).

In order to convict Appellant of sexual assault of a child in violation of Article 120b, UCMJ, the Government was required to prove two elements beyond a reasonable doubt: (1) that on divers occasions, Appellant committed a sexual act upon VP; and (2) that at the time of the sexual act, VP had attained the age of 12 years but not attained the age of 16 years. *See* 10 U.S.C. § 920b(b); *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), pt. IV, ¶ 62.b.(2)(a). "Sexual act," in this context, includes penetration of the vulva, anus, or mouth by the penis; contact between the mouth and the penis, vulva, scrotum, or anus; penetration of the vulva, penis, or anus by any part of the body or any object with the intent to abuse, humiliate, harass or degrade, or to arouse or gratify the sexual desire of any person; or the direct touching of the genitalia of another person under the age of 16 years with the intent to abuse, humiliate, harass or degrade, or to arouse or gratify the sexual desire of any person. *See* 2019 *MCM*, pt. IV, ¶ 62.c.(2). Article 120b, UCMJ, does not require the Government to prove that an accused knew a child had not attained the age of 16 years. However, it is a defense in a prosecution for sexual assault of a child that the accused reasonably believed the victim had attained the age of 16 years, which the accused must prove by a preponderance of the evidence. *See* 2019 *MCM*, pt. IV, ¶ 62.a.(d)(2); *see also* Rule for Courts-Martial (R.C.M.) 916(j)(2).

"Findings may be based on direct or circumstantial evidence." R.C.M. 918(c). The evidence to support a mistake-of-fact defense can come from evidence presented by the defense, the prosecution, or the court-martial. *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998) (citations omitted). "Neither Article 120b(d)(2), UCMJ, [10 U.S.C. § 920b(d)(2),] nor R.C.M. 916(j)(2) place any limitations on the source or the kind of evidence that may establish a mistake of fact defense." *Thompson*, 83 M.J. at 8.

### 2. Analysis

The Government introduced ample evidence to prove the two elements of sexual abuse of a child beyond a reasonable doubt. The messages, videos, and DNA analysis, together with an abundance of circumstantial evidence, indicate Appellant committed a sexual act on VP on more than one occasion. Moreover, VP's stepfather testified VP was 15 years old at the time of the charged offense, and her actual age was not in dispute at trial or on appeal. The focus of Appellant's argument and our analysis is whether Appellant was able to demonstrate by a preponderance of the evidence that he both *actually* and *reasonably* believed VP was at least 16 years old when he committed sexual acts on her. The military judge evidently found Appellant failed to meet this burden. We reach the same conclusion.

Appellant argues the evidence provides circumstantial proof he reasonably believed VP was at least 16 years old. He cites VP's history of misrepresenting

her age on multiple social media sites, including dating applications, and to multiple adult men she exchanged messages with. He cites several adult behaviors VP purported to Appellant that she engaged in, including drinking alcohol, using edible marijuana products, and engaging in sexual activity with other men. She claimed to be a college student, and she stated she was involved in international travel that could be unusual for an underage student during the school year. In addition, Appellant and VP discussed the possibility of traveling to South Africa together, and of getting married in the future.

Although such evidence is relevant, the military judge could have reasonably found it unpersuasive to demonstrate Appellant actually believed VP was at least 16 years old throughout their sexual relationship. The military judge could have reasonably concluded it was at least equally plausible Appellant knew or suspected VP was lying about her age on social media, being a college student, and other purported activities, and she was instead simply engaged in a number of age-inappropriate behaviors—notably including sexual activity with adult men such as Appellant. Other evidence tends to suggest Appellant might have known or suspected VP was not as old as she often purported to be. An AFOSI agent testified VP told Appellant she was 16 years old, indicating Appellant would have known, whatever VP's true age was, that she misrepresented her age on social media applications. In addition, VP lived in a room in her parents' house. Evidently, Appellant and VP did not go out in public together; Appellant only visited VP in her house when her parents were away. Investigators observed when Appellant came to her house on 30 May 2019— after her parents had left for the day—he had parked down the street from VP's house, as if afraid of having their relationship exposed. This arguably furtive behavior could reasonably be interpreted as demonstrating consciousness of guilt. Perhaps most telling, A1C TM testified that *Appellant described continuing to have "intercourse" with a "girl" even after he discovered she was "underage."* Although the identity of the "girl" was not clear to A1C TM, this conversation occurred long after Appellant's relationship with VP had been exposed to the AFOSI, approximately three months before Appellant's court-martial, and after Appellant had been discussing his "case" earlier throughout the day. Under the circumstances, the military judge could have reasonably concluded Appellant was referring to VP, and that by "underage" he meant under the age of 16 years.

Considering all of the evidence presented at trial, the military judge could have reasonably concluded as a rational factfinder that Appellant failed to meet his burden to demonstrate he both actually and reasonably believed VP was at least 16 years old, and that the Government met its burden to prove Appellant was guilty of sexual assault of a child on divers occasions beyond a reasonable doubt. Moreover, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the

witnesses, we are also convinced of Appellant's guilt of sexual assault of a child beyond a reasonable doubt. Therefore, we find Appellant's conviction for this offense both legally and factually sufficient.

**B. Sentence Reassessment**

Having set aside the findings of guilty with respect to Charge IV and its Specification, alleging production of child pornography, we have considered whether we may reliably reassess Appellant's sentence in light of the factors identified in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). We conclude that we can. This endeavor is greatly facilitated by the following comments from the military judge after he announced the sentence:

> For those who may review this record, although not pertinent[ ] under the applicable rules[,] if sentencing under the new rules,[3] I would have sentenced this accused to reduction to E-1; no confinement for the [S]pecification of Charge II, 12 months of confinement for the [S]pecification of Charge III; and 12 month[s] of confinement for the Specification of Charge IV, with the sentences of confinement running concurrently. And to be frank, I would have sentenced [Appellant] to no punishment for the [S]pecification of Charge II.

In other words, the military judge explained he would have imposed 12 months of confinement whether he sentenced Appellant for both production of child pornography and sexual assault of a child, or for the latter offense alone. Moreover, we note a dishonorable discharge is a mandatory punishment for the offense of sexual assault of a child. Both the military judge's comments and the mandatory dishonorable discharge weigh significantly in favor of reassessment. As for the *Winckelmann* factors themselves, although there has arguably been a dramatic change to the penalty landscape, we find the other enumerated factors favor reassessment. *See id.*

Accordingly, considering the facts of Appellant's case and the totality of the circumstances, we find we are able to determine that, "absent any error, the sentence adjudged would have been of at least a certain severity." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). Having considered Appellant, the nature and seriousness of his offenses, and all matters contained in the record of trial, we reassess Appellant's sentence to a dishonorable discharge,

---

[3] Because Appellant's offenses occurred both before and after 1 January 2019, he was able to elect whether to be sentenced under the Rules for Courts-Martial that were in effect before or after that date. Appellant elected to be sentenced in accordance with the pre-1 January 2019 rules, which provided for a unitary sentence. *Compare* R.C.M. 1002(d)(2) (2019 *MCM*) *with* R.C.M. 1002(b) (2016 *MCM*).

confinement for 12 months, and reduction to the grade of E-1. Moreover, having given individualized consideration to Appellant, the nature and seriousness of the offense, Appellant's record of service, and all other matters contained in the record of trial, we find the sentence, as reassessed, is not inappropriately severe. *See United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam).

### III. CONCLUSION

The findings of guilty as to the Specification of Charge IV and Charge IV are **SET ASIDE**. Charge IV and its Specification are **DISMISSED WITH PREJUDICE**. We reassess the sentence to a dishonorable discharge, confinement for 12 months, and reduction to the grade of E-1. The remaining findings and the sentence, as reassessed, are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the remaining findings and the reassessed sentence are **AFFIRMED**.


GRUEN, Judge (dissenting):

I must respectfully dissent from the decision of the majority which affirms the finding of guilty regarding the conviction for sexual assault of a child, Article 120b(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b(b) (2018). The totality of the circumstances presented in the record of trial leaves me convinced that Appellant met his burden to prove by a preponderance of evidence that he had a reasonable mistake of fact regarding VP's age. Thus, I would find Appellant's conviction for sexual assault of a child factually insufficient, and I therefore dissent.

Appellant met VP on Bumble, a dating platform which requires its users to certify that they are at least 18 years of age. Not only did VP certify she was of age, but she also represented she was 18 years old on her Bumble profile and other social media platforms, and held herself out to be a college student. Soon after meeting on Bumble, Appellant and VP moved their conversations to another social media application, where they exchanged 918 messages in the approximately two months they interacted. Nowhere in these messages is there any indication that VP informed Appellant of her real age. There is also no indication that he had any knowledge of or concern about her real age. Conversely, the conversations included a plethora of evidence during this two-month window indicating VP was older than 16 years.

In March 2019, Appellant was a 20-year-old Airman stationed at Aviano Air Base, Italy. VP's true age at that time was 15 years old. The 918 messages, sent between 29 March 2019 and 30 May 2019, indicate that on 30 March 2019,

5 April 2019, 11 April 2019, and 15 April 2019, Appellant went to VP's residence and engaged in sexual activity with her. Appellant argues the evidence provides circumstantial proof he reasonably believed VP was at least 16 years old when he had sex with VP. He cites VP's history of representing herself as at least 16 years on multiple social media sites, including dating applications, and to multiple adult men. He cites several adult behaviors that VP engaged in and informed him of, including drinking alcohol, doing shots at a bar, using edible marijuana products, and engaging in sexual activity with other adult men. She claimed to be a college student, and participated in international travel that would be unusual for an underage student during the school year. In addition, Appellant and VP discussed the possibility of traveling to South Africa together, and of getting married in the future. Seemingly unbeknownst to Appellant, VP was homeschooled and was therefore home during the daytime, which is inconsistent with the conduct of most high-school-age children. I find this is sufficient to show by a preponderance of the evidence that Appellant had a reasonable mistake of fact regarding VP's age.

In the majority opinion, my colleagues rely on scant evidence to discern that Appellant failed to meet his burden of proof for this defense. Specifically, they point to testimony of Senior Airman (SrA) DN, who testified he had a similar initial interaction with VP, but despite VP's misrepresentations he soon determined she was actually under 16 years old without ever meeting her in person. There is no evidence to suggest that Appellant knew of SrA DN's experience with VP, thus it has little to no probative value, while it is prejudicial. Simply put, just because one of VP's various male interests discovered she was under 16 years of age has no bearing on what Appellant knew or believed VP's age to be.

Another witness was important to the majority opinion—the testimony of Airman First Class (A1C) TM who claimed Appellant told him, while "really drunk," that "he had met a girl that was -- he was continuing to have intercourse and then he found out eventually that she was underaged and continued." I do not give this testimony the weight my colleagues afford it and find it suffers for a lack of credibility. A1C TM admitted he was barely paying attention to Appellant when this statement was made, Appellant was drunk and rambling, and that none of what Appellant was saying made any sense to A1C TM. Moreover, A1C TM did not know what female Appellant was talking about or Appellant's understanding of "underage." A1C TM was clear about the fact that he ignored what Appellant was telling him because he "didn't think anything of it" and he "was distracted." A1C TM stated he "just continued to ignore [Appellant] because [he] thought [Appellant] was too drunk or something like that." He testified Appellant "passed out in [his] passenger seat on the way home." On cross-examination, A1C TM stated again, that Appellant "kept continuing talking, but I was trying to navigate, so I didn't pay much attention to

him." A1C TM went on to clarify, "I wasn't paying attention. Again, I was driving . . . . It did not make any sense." Of note, A1C TM testified that Appellant told him three different stories and what he was saying "did not make any sense."

The text messages, photos, and social media posts support both an objective and subjective reasonable belief that VP was over the age of 16, as she consistently represented. My dissenting opinion in this case should not be read to condone or excuse sexual conduct with those under the age of 16 years by servicemembers. It should, however, serve to reinforce laws that protect the rights and defenses available to servicemembers accused of crimes that, if convicted, will forever change their lives. Therefore, I dissent.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court