**UNITED STATES, Appellee,**

v.

**Nelson R. TATUM, Technical Sergeant
U.S. Air Force, Appellant.**

No. 67,407.

ACM 29332.

U.S. Court of Military Appeals.

Argued Oct. 6, 1992.

Decided Feb. 25, 1993.

For Appellant: *Major Mary C. Yastish-ock* (argued); *Colonel Jeffrey R. Owens* (on brief); *Lieutenant Colonel Terry J. Woodhouse.*

For Appellee: *Captain David C. Wesley* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief); *Colonel Richard L. Purdon* and *Lieutenant Colonel Jeffery T. Infelise.*

*Opinion of the Court*

WISS, Judge:

In a contested trial before members, a general court-martial convicted appellant of wrongfully and knowingly receiving child pornography through the mail (contrary to 18 USC § 2252), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The members then sentenced appellant to a bad-conduct discharge and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed without opinion.

On appellant's petition, we granted review of an issue specified by us, which inquires:

> WHETHER APPELLANT'S CONVICTION SHOULD BE SET ASIDE BECAUSE HE WAS ENTRAPPED AS A MATTER OF LAW. *SEE JACOBSON V. UNITED STATES*, No. 90–1124 [— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992)].

As the issue indicates, our interest in this case emanated from a then-pending entrapment case in the Supreme Court of the United States. Now, after fully considering the subsequent opinion of that Court, *see Jacobson v. United States*, — U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), and the briefs and oral argument of the parties here, we hold that entrapment was not reasonably raised by the evidence, so we affirm.

I

Appellant was caught in a sting operation known as "Operation Circe," conducted by agents of the U.S. Customs Service with cooperation of the Office of Postal Inspectors. The operation's purpose was to identify, investigate, and prosecute persons involved in production, reproduction, sale, and purchase of child pornography. Appellant was *not* a target of this operation. Instead, appellant himself turned on the light that ultimately focused on him.

In October 1989, appellant purchased an adult magazine entitled "Swingers Digest." This publication consisted of merchandise and sex-opportunity advertisements, liberally punctuated with sexually explicit photographs and picturesque layouts. One of the ads, *sans* any accompanying artwork, was run by agents of Operation Circe and read as follows:

V.H.S. VIDEOS

QUALITY VHS VIDEOS FOR SALE. BIZARRE AND UNUSUAL. SEND $1.00 FOR LISTING AND PRICES TO BAUMC, P.O. BOX 1772, APTOS, CA 95001

In February 1990, appellant responded to this ad by requesting the information and enclosing the necessary fee. Two or 3 weeks later, appellant received "Tots and Teens," a 3–page catalog containing titles and descriptions of several dozen movies that were available for order; each description, without exception, represented that children aged anywhere between 10 and 16 years old were featured in variously described, blatantly explicit sexual activity.

In May or June, appellant ordered three of the movies listed in this catalog: "Blackmail for Daddy," "Educating Valerie," and "Nymph Lover." The movie descriptions stated that they depicted, respectively, "13 & 15 yr old girls"; "10 yr old little girl"; and "12 yr old girl/14 yr old boy," along with adults. The sting operation received appellant's order, processed it, sent him a single video cassette that contained all of the movies he had ordered, and delivered the cassette to him via an agent disguised as a Federal Express employee. Within minutes of the delivery, agents arrested appellant.

Appellant's ensuing trial for receiving child pornography through the mail focused on appellant's knowledge that the materials he had received contained "sexually explicit conduct by minors." He testified that he "didn't know what [he] was going to receive" when he had placed his order, that he simply had been "curious," and that he had not expected to receive "child pornography." He explained that he had thought that the representations in the ad "could not be true" because he knew that child pornography could not be sold in the United States. He also testified, though, that he had noticed that the producer was not in the United States. He testified further that, because of the time lapse between his order and the delivery, he had thought he had been defrauded of his money ($125.00) and that he had no idea what he was signing for when the package was delivered.

Neither the military judge nor either counsel suggested at trial that entrapment was an issue raised by the evidence. Indeed, at one point during a discussion about proposed instructions, defense counsel referred to the fact that a search of appellant's quarters at the time of his arrest had not uncovered any other child pornography, and counsel asked that this be mentioned as bearing on "lack of predisposition." When the military judge responded, "Well, we're not dealing with entrapment here," counsel answered, "No, I understand. I should have better phrased that as lack of knowledge...." Appellant did raise the issue in the Court of Military Review, but that court did not particularly address it.

II

Before us, appellant invokes the classic definition of entrapment and relies on *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). He argues that the criminal plan here originated with the Government and induced his criminal activity, and he asserts that the evidence does not show that he had any criminal predisposition. The Government responds that, on the contrary, appellant demonstrated his predisposition by making his initial unsolicited request for more information about the tapes and then, without any further government action, by placing an order for what were obviously sexually explicit child-actor movies. As the Government colorfully characterizes its view of the evidence, "The bait was not lowered down into the water in an effort to entice this appellant to do something he

would not otherwise do—he jumped into the boat and took the bait before it could even be placed on a hook!" Answer to Final Brief at 4.

With appropriate disregard of some apparent metaphoric hyperbole, we agree. In *Jacobson*, the majority opinion recognized that "there can be no dispute that the Government may use undercover agents to enforce the law" and "'... the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution,'" — U.S. at ——, 112 S.Ct. at 1540, quoting *Sorrells v. United States*, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932), and citing *Sherman v. United States, supra*, 356 U.S. at 372, 78 S.Ct. at 820, and *United States v. Russell*, 411 U.S. 423, 435–36, 93 S.Ct. 1637, 1644–45, 36 L.Ed.2d 366 (1973).

Nonetheless, if the defense at trial shows that law officers did more than "merely afford opportunities or facilities for the commission of the offense" and, instead, "originate[d] a criminal design" and "induce[d] commission of the crime," then "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." —— U.S. at ——, 112 S.Ct. at 1540. *Accord United States v. Cooper*, 35 MJ 417, 425 (CMA 1992); *United States v. Whittle*, 34 MJ 206, 208 (CMA 1992); *United States v. Vanzandt*, 14 MJ 332, 342–43 (CMA 1982). *See also* RCM 916(g), Manual for Courts–Martial, United States, 1984 ("It is a defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense."). As with any affirmative defense, a military judge has a *sua sponte* duty to offer appropriate instructions to the members if entrapment is reasonably raised by the evidence. *See United States v. Williams*, 21 MJ 360, 362 (CMA 1986). *Accord United States v. Buckley*, 35 MJ 262, 263 (CMA 1992); *United States v. Rankins*, 34 MJ 326, 328 (CMA 1992). *See also* RCM 920(e)(3). Absence of a defense request for such an instruction does not waive it. *United States v. Taylor*, 26 MJ 127, 129 (CMA 1988), relying on Article 51(c), UCMJ, 10 USC § 851(c). *But cf.* RCM 920(f).

As the Court noted in *United States v. Taylor, supra* at 129, "Of course, the military judge's duty to give the instruction exists only when the evidence reasonably raises the affirmative defense." In an almost uncanny contemplation of facts like those in this case, the Supreme Court hypothesized in *Jacobson*:

Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate "sting" operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition. *See United States v. Sherman*, 200 F.2d 880, 882 (CA 2 1952). *Had the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner—who must be presumed to know the law—had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction.* *Mathews v. United States*, 485 U.S. 58, 66, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988).

—— U.S. at ——, 112 S.Ct. at 1541 (emphasis added).

We conclude that this is such a case. The Government had no personal contact at all with appellant prior to delivery of the tape. Appellant's initial exposure to the sting operation was through a relatively innocuous advertisement in a sexually-oriented publication which he had purchased. Appellant responded, knowing that what he had ordered would depict "bizarre and unusual" video movies. Then, when he received merely a descriptive catalog offering

solely child-pornography fare, appellant ordered three such movies. At all points after the initial advertisement—the mere opportunity to commit criminal activity—all contact with appellant was initiated by appellant himself.

Under these circumstances, the defense of entrapment was not reasonably raised by the evidence.

### III

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.