UNITED STATES, Appellee

v.

Randall J. WILLIS, Sergeant,
U.S. Air Force, Appellant.

No. 93–1314.
CMR No. 29623.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 8, 1994.

Decided March 22, 1995.

For Appellant: *Captain J. Knight Champion III* (argued); *Colonel Jay L. Cohen* and *Lieutenant Colonel Joseph L. Heimann* (on brief); *Captain Ursula P. Mohl.*

For Appellee: *Captain Jane L. Harless* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Thomas E. Schlegel* (on brief).

## Opinion of the Court

SULLIVAN, Chief Judge:

1. Appellant was tried by a general court-martial composed of members at Langley Air Force Base, Virginia, on August 19–22, 1991. Contrary to his pleas, he was found guilty of rape and wrongful purchase of alcohol for a minor, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. The members of his court-martial sentenced appellant to a dishonorable discharge, hard labor without confinement for 3 months, and reduction to E–1. On November 21, 1991, the convening authority approved the sentence. The Court of Military Review[1] affirmed on May 5, 1993, in an unpublished opinion.

2. On December 14, 1993, this Court granted review on the following 3 issues:

### I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO INSTRUCT THE MEMBERS ON THE AFFIRMATIVE DEFENSE OF MISTAKE OF FACT WHEN APPELLANT BELIEVED, AND THE FACTS REASONABLY RAISED, THAT H.D. CONSENTED TO THE INTERCOURSE.

1. *See* 41 MJ 213, 229 n. * (1994).

### II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS HIS POST–POLYGRAPH ADMISSIONS BECAUSE SUCH TESTIMONY IS PROHIBITED BY [Mil.R.Evid.] 707.

### III

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE ERRONEOUSLY INSTRUCTED THE MEMBERS THAT, EVEN IF A PUNITIVE DISCHARGE WERE IMPOSED, APPELLANT WOULD BE ENTITLED TO "VESTED" VETERAN'S BENEFITS FROM PRIOR ENLISTMENTS.

We hold that the military judge did not err by failing to instruct *sua sponte* on the affirmative defense of mistake of fact to the rape charge in this case. *United States v. Buckley,* 35 MJ 262 (CMA 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1365, 122 L.Ed.2d 743 (1993). We also hold that the military judge did not err in denying the defense motion to suppress appellant's post-polygraph admissions. *See* Mil.R.Evid. 707(b), Manual for Courts–Martial, United States, 1984 (Change 5). Finally, the third issue in this case we resolve in the Government's favor in light of our recent decision in *United States v. McElroy,* 40 MJ 368 (CMA 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1256, 131 L.Ed.2d 137 (1995).

3. The Court of Military Review summarized the facts of this case and the testimony at trial pertinent to the first granted issue, as follows:

Appellant at the time of the offense was a 30–year–old security policeman with 6 years of service. The victim, HD, was a 17–year–old high school student who agreed to go on a date with appellant. Instead of going to a movie as initially discussed, they returned to appellant's dormitory room on Langley Air Force Base. Once in the room, HD drank some wine

coolers purchased by appellant and played some computer games. After several hours appellant and HD went to another dormitory room for an impromptu party. When they returned to appellant's dorm room, two different stories emerged as to what happened.

HD testified she consumed a brandy and cola along with four wine coolers during the evening and was feeling sleepy when she got back to appellant's room. Appellant left her alone in his room while he went to visit another friend. HD said she was feeling the effects of the alcohol and curled up on a love seat in appellant's room falling asleep. She awoke on appellant's bed, naked from the waist down, with appellant penetrating her.

Disagreeing with HD's statements, appellant maintains he never offered HD a mixed drink and although she may have helped herself to a wine cooler, she was not drunk. Appellant testified HD and he laid on his bed to finish watching a video when they returned to his room. He helped her remove her boots and he began to massage her legs. She responded to the massage, they kissed, she removed her clothes and they engaged in consensual sexual intercourse until he stopped after she said, "no this is wrong." Appellant was unequivocal that HD was awake, alert, and she willingly participated.

Later that evening, after appellant had taken her home, HD called a girlfriend telling her she was raped. Also that night HD called a rape-crisis hot line to report the incident. The next afternoon she told her mother. When first confronted by investigators, appellant denied engaging in sexual intercourse with HD.

Unpub. op. at 1–2.

## I

██ 4. Our starting point in resolving the first granted issue is Article 120(a), which provides:

(a) Any person subject to this chapter who commits an act of sexual intercourse with a female not his wife [2], by force and without her consent, is guilty of rape and shall be punished by death or such other punishment as a court-martial may direct.

This codal provision is not a strict-liability statute which imposes criminal sanctions upon a servicemember without regard to his mental state. On the other hand, this statute does not expressly require that an accused know or believe that his sex partner is not consenting to his act of sexual intercourse. Nevertheless, Article 120(a) is a general-intent offense requiring proof that an accused deliberately or purposefully had sexual intercourse by force and without the victim's consent. See United States v. Langley, 33 MJ 278, 281–82 ¶ 14 (CMA 1991).

5. This Court has long held that an honest and reasonable mistake on the part of a servicemember as to the consent of a female is a valid defense to a charge of rape under Article 120(a). United States v. Buckley, 35 MJ at 263 ¶ 7; United States v. Langley, 33 MJ at 281–82 ¶ 14; United States v. Taylor, 26 MJ 127, 128 ¶ 3 (CMA 1988); United States v. Baran, 22 MJ 265, 267 ¶ 10 (CMA 1986); United States v. Carr, 18 MJ 297, 301 ¶ 14 (CMA 1984). Neither of the parties to this appeal suggest that such a defense is inappropriate. See generally RCM 916(j), Manual, supra. Cf. W. LaFave and A. Scott, Substantive Criminal Law § 5.1 at 578 (1986). Accordingly, our precise concern today is whether some evidence of this defense was reasonably raised in the present case. United States v. Buckley, supra at 263 ¶ 7.

6. Appellant asserts that there is "an abundance of evidence" in his case that he "perceived that the victim consented." Final Brief at 5. He points to his own testimony that the alleged victim "was responsive during sexual intercourse and that she was awake." Final Brief at 4. He also notes that other witnesses testified that "the victim behaved amicably toward" him. Id. at 5. Citing the decision of the Court of Military Review in United States v. Daniels, 28 MJ 743 (AFCMR 1989), he argues that the military judge should have given a mistake-of-

2. Public Law No. 102–484, 106 Stat. 2506 (1992) deleted the "with ... wife" language, effective for offenses committed beginning October 23, 1992.

fact instruction in these circumstances. Final Brief at 4–5. We disagree for several reasons.

■ 7. First, the record clearly reflects that appellant's theory at trial was that the prosecutrix was fully awake and fully consented to the initiation of intercourse. No possibility of mistake was even hinted. *See United States v. Buckley*, 35 MJ 262. Second, a mistake-of-fact defense to a charge of rape requires that a mistake as to consent be both honest *and* reasonable. *See United States v. Langley*, 33 MJ 278. The testimony relied on by appellant tended to show objective circumstances upon which a reasonable person might rely to infer consent. However, they provided no insight as to whether appellant actually or subjectively did infer consent based on these circumstances. *See People v. Williams*, 4 Cal.4th 354, 14 Cal. Rptr.2d 441, 447, 841 P.2d 961, 967 ¶ 27 (1992) (Third-party testimony of absence of screams or other sounds of struggle "sheds no light" on accused's state of mind). Finally, our Court and other courts have clearly held that a mistake-of-fact instruction is not warranted where the evidence raises and the parties dispute only the question of actual consent. *United States v. Buckley*, 35 MJ at 264 ¶¶ 8–9; *United States v. Jones*, 10 USCMA 122, 128, 27 CMR 196, 202 ¶ 14 (1959). *See generally United States v. Norquay*, 987 F.2d 475, 479 ¶ 8 (8th Cir.1993); *People v. Williams*, 841 P.2d at 966 ¶ 24.[3]

## II

8. The second issue in this case asks whether Mil.R.Evid. 707 prohibits admission of appellant's post-polygraph statements to a special agent who conducted the polygraph examination. Although most of these statements were not clearly inculpatory, appellant did admit that "approximately one minute after she told him to stop that he removed his penis from her vagina and ejaculated on the bed." Appellant made a motion to suppress this testimony at trial which was denied by military judge.

9. Mil.R.Evid. 707 states:

**Rule 707. Polygraph Examinations**

(a) Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence.

(b) Nothing in this section is intended to exclude from evidence statements made during a polygraph examination which are otherwise admissible.

We further note that the Court of Military Review specifically found in this case that "[a]ppellant's admissions were the product of proper rights' advisement pursuant to Article 31, UCMJ," 10 USC § 831, and "[t]he court members were unaware appellant was administered a polygraph examination." Unpub. op. at 3.

■ 10. Appellant first asserts that statements obtained after a polygraph examination or during breaks in successive polygraph examinations are inadmissible under Mil.R.Evid. 707. He argues that such evidence is tainted by the fact that it was adduced or generated from questions during the examination. We note that this rule does not prohibit polygraph examinations but rather prohibits admission at courts-martial of evidence referring to these tests. Moreover, subparagraph b of this rule expressly permits admission of statements during such an examination. In this light, appellant's argument for an implied derivative-evidence rule for statements made after such examination is simply irrational.

■ 11. Appellant next argues that the Government's evidence of his various post-polygraph statements should have been suppressed under Mil.R.Evid. 707 because they created an impermissible inference that he took and flunked a polygraph. The Court of Military Review, however, found that the

·3. The decision of the Court of Military Review in *United States v. Daniels*, 28 MJ 743 (AFCMR 1989), does not conflict with this general principle. There, a psychologist testifying for the Government provided expert testimony explaining divergent stories of the accused and the alleged victim on the basis of unconscious responses of a person in a drunken and sleepy state. *Id.* at 746 ¶ 11.

members were unaware that appellant took a polygraph examination. In any event, Mil. R.Evid. 707 does not authorize suppressing evidence of post-polygraph statements based on mere speculation that they were produced as a result of a failed polygraph examination. Again, appellant's reading of this rule is not supported by logic or authority.

12. Finally, appellant obliquely argues that his Sixth Amendment right to confrontation was violated when his post-polygraph statements were not excluded under Mil. R.Evid. 707. In this regard, he notes that Mil.R.Evid. 707(a) precluded him from making any reference to the failed polygraph examination which produced these statements in cross-examining the agent who took these statements from him. Consequently, he asserts that admission of these statements under this rule presented him with "an impossible choice," namely:

> either 1) not mention[ing] that appellant's responses to questions came after he was told he failed the polygraph, which would defeat their ability to test the reliability of those statements, or 2) mention[ing] the fact that the statements came after being told he flunked the polygraph, thus confusing the court members as to whether the appellant was telling the truth.

Final Brief at 6.

▇ 13. Even assuming Mil.R.Evid. 707 violates the Sixth Amendment,[4] not every violation of an accused's confrontation rights under the Sixth Amendment constitutes reversible error. *See Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). If the reviewing court can say such error was harmless beyond a reasonable doubt, reversal is not required. *Id. Cf. Olden v. Kentucky,* 488 U.S. 227, 232–33, ¶ 13, 109 S.Ct. 480, 483–84, 102 L.Ed.2d 513 (1988). Here, the precluded cross-examination would establish that appellant failed a polygraph examination concerning his denial that he raped the alleged victim. While such evidence might indeed explain his subsequent admissions or the pressure that led to them,

it also would have surely sunk the defense's ship. In any event, appellant never offered to waive this rule with respect to his cross-examination of Special Agent Middleton or sought a ruling from the judge on the waiver question. *See* Mil.R.Evid. 103.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and CRAWFORD concur.

GIERKE, Judge (concurring in part in the result):

14. I agree with the majority's disposition of the first issue, except for the statement that "[t]he testimony relied on by appellant tended to show objective circumstances upon which a reasonable person might rely to infer consent." 41 MJ at 438 ¶ 7. This statement suggests that the alleged victim was sending mixed messages. There were no mixed messages in this case. Appellant's testimony unequivocally describes actual consent. The victim's testimony unequivocally describes lack of consent. Mistake of fact was never even suggested, much less raised by the evidence.

15. I agree that the military judge did not abuse his discretion by precluding cross-examination which would have revealed that appellant had failed a polygraph examination. Such cross-examination would have been highly prejudicial and only marginally relevant. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679 ¶ 12, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (Trial judge has "wide latitude insofar as the Confrontation Clause is concerned" to prevent "prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant"). If the military judge had not limited the cross-examination in this case, I have no doubt that we would now be entertaining an issue regarding ineffectiveness of counsel.

WISS, Judge (concurring in part and dissenting in part):

16. I concur with the majority as to Issues II and III. Regarding the first issue,

---

4. We do not hold today that Mil.R.Evid. 707 violates appellant's rights under the Sixth Amendment. This issue is expressly before this

Court in *United States v. Williams,* (No. 94–5006/AR), which is to be argued on March 30, 1995, in New York City.

however, which is treated in Part I of the opinion, I am unable to join the majority's opinion or its conclusion because, quite frankly, I simply do not understand its articulated bases for finding that mistake of fact relative to consent to intercourse was not reasonably raised by some evidence in this record.

17. Appellant complains on appeal that the military judge dropped the ball on his *sua sponte* responsibility to instruct on mistake of fact when that defense was reasonably raised by the evidence. *United States v. Buckley*, 35 MJ 262, 263 ¶ 7 (CMA 1992), *cert. denied*, — U.S. —, 113 S.Ct. 1365, 122 L.Ed.2d 743 (1993). *See generally United States v. True*, 41 MJ 424, 426 ¶ 8 (1995); *United States v. Tatum*, 36 MJ 302, 304 ¶ 11 (CMA 1993). The majority rejects appellant's contention "for several reasons." 41 MJ at 438 ¶¶ 6–7.

18. First, the majority points out that appellant's defense theory was consent in fact and that he never acknowledged in his trial testimony that he might have been mistaken as to HD's consent; instead, he steadfastly insisted, "I did have her consent, sir." In other words, because appellant adamantly held to his personal conviction that HD in fact had consented to their intercourse and refused to admit that he might have been mistaken, the majority hamstrings the truth-finding process in the context of a record that, in other respects, contains adequate evidence that reasonably raises the possibility that appellant was mistaken, whether he chose to acknowledge as much or not. *But see United States v. True*, *supra* (victim of rape claimed she was asleep when appellant penetrated her and appellant claimed her eyes were open—instruction given on mistake of fact). Neither appellant nor society is served by the military judge's failure to present such a possibility to the members for their consideration in light of *all* the evidence, not just appellant's testimony and his stubborn insistence on the rightness of his conduct. *See United States v. Buckley*, 35 MJ at 265 ¶¶ 15–16 (Wiss, J., dissenting).

19. Second, making reference to the principle that a mistake of fact must be both honest and reasonable, and then recognizing that the evidence "tended to show objective circumstances upon which a reasonable person might rely to infer consent"—a critically important concession, in my view—the majority nonetheless concludes that the evidence "provided no insight whether appellant actually or subjectively did infer consent based on these circumstances." 41 MJ at 438 ¶ 7. The majority simply is wrong.

20. For starters, appellant *asserted* as much when he testified, "I did have her consent, sir." Additionally, he implied as much when he testified that, when HD told him in the midst of intercourse that "this is wrong," he stopped—which surely is evidence from which factfinders might reasonably conclude that appellant believed that their intercourse was with HD's consent prior to that expression of a change of heart. What *is* missing is appellant's admission that he might have been *wrong* about HD's consent, but there is no wanting of evidence that he sincerely believed that he did have her consent. His insistence that he was right, however, would not preclude the members from concluding that he was wrong but believed he was right. *See United States v. Taylor*, 26 MJ 127, 131 ¶ 12 (CMA 1988) ("defense theory at trial is not dispositive in determining what affirmative defenses have been reasonably raised by the evidence," *citing United States v. Steinruck*, 11 MJ 322 (CMA 1981)). They should have been provided the opportunity to consider such a scenario.

21. Finally, the majority correctly recites that "our Court and other courts have clearly held that a mistake-of-fact instruction is not warranted where the evidence raises and the parties dispute only the question of actual consent." 41 MJ at 438 ¶ 7. I agree. For instance, as was the case in *People v. Williams*, 4 Cal. 4th 354, 14 Cal.Rptr.2d 441, 446, 841 P.2d 961, 966 ¶ 24 (1992), no mistake of fact is reasonably raised when the defendant claims that the victim readily consented and even was aggressive in their sexual relations (even to the point of "insert[ing] his penis inside herself") but the victim asserts that intercourse occurred only after the defendant had "blocked" her exit, hit her in the

eye, "pushed her onto the bed, and ... warn[ed] her that he did not like to hurt people." Neither is mistake of fact reasonably raised when, as in *United States v. Norquay*, 987 F.2d 475, 479 ¶ 10 (8th Cir. 1993), the victim testified that one defendant stopped the truck in which they were riding, "got out, hit her with his fist, pulled off her shoes and pants, and raped her with her legs hanging out of the truck," and he and his co-actor repeatedly raped her in a physically violent manner followed by threats of harm if she told anyone. There simply is no room under such physically and psychologically violent scenarios for a defendant to claim that he honestly and reasonably mistook the victim's state of mind.

22. Those, however, are not this case. Candidly, this Court frequently sees cases of sexual assaults that do not involve physical or psychological violence and that involve intoxicated victims (and often intoxicated defendants) in which the defendants contend that the actions of the victim reasonably demonstrated her consent and the assertion of the victim to the contrary. It does not require an expert to tell the members that, when a human being is intoxicated, his or her perception—and even recollection—is often grossly affected. *See generally* The Random House College Dictionary 406 (rev. ed. 1980) ("drunk ... [means] having one's faculties impaired by an excess of alcoholic liquor ..."); para. 35c(3), Part IV, Manual for Courts–Martial, United States, 1984 (Change 3) (" 'Drunk' and 'impaired' mean any intoxication which is sufficient sensibly to impair the rational and full exercise of the mental or physical faculties."). *But cf. United States v. Daniels*, 28 MJ 743 (AFCMR 1989).

23. Sorting all that out is solely the function of the members. Depriving members of that opportunity and responsibility, when the record fairly and reasonably raises the possibility of a mistake as to consent—regardless of an accused's stubborn insistence that no mistake was made and that, in fact, consent was given—serves no useful purpose.

24. In sum, then, I agree with the majority that there is evidence in this record that "tended to show objective circumstances upon which a reasonable person might rely to infer consent." 41 MJ at 438 ¶ 7. I believe further, however, that there is ample evidence in the record that appellant in fact (that is, honestly) believed that HD consented. That is enough to require an instruction, and appellant's refusal to acknowledge a possibility that he may have been mistaken in his honest belief is not dispositive otherwise. Accordingly, I dissent as to Issue I.