STUCKY, Judge
(dissenting):
The majority reaches its conclusion by limiting the evidence it considers and by reducing the mistake of fact defense to a one-dimensional test. The evidence did not reasonably raise a mistake of fact defense as to the indecent assault specification. Therefore, I respectfully dissent.
As noted by the majority, in early 2004, Appellant and Petty Officer ED had a consensual sexual relationship that lasted “a couple of months.” On occasion during that relationship, Petty Officer ED had declined to have sex with Appellant, and he had always respected her wishes. She terminated the relationship because she “didn’t want to pursue it any further.” Thereafter, they had no contact for some time.
On August 12, 2004, Petty Officer ED was sick in quarters. Appellant knocked on her door and, when she answered, said he had been deployed, missed her, and wanted to go out with her. She did not answer, except to say she was sick, and to lie down on her bed. He lay down beside her, and they both fell asleep. When she awoke, Appellant was gone.
On August 15, 2004, Petty Officer ED was still sick in quarters. She went out for food, and upon returning found Appellant standing outside her door. She let him into her room, whereupon he asked her for sex. She said, “no,” as she did not feel well and did not want to. He continued his efforts to convince her to have sex with him by kissing her and touching her breasts. While Petty Officer ED willingly permitted him to do so, she continued to decline his entreaties for sex by saying “no.” He removed her shirt and lay on the bed. She “got on top of him” and they continued kissing. But then Appellant “flipped [her] over on [her] back, and then he grabbed [her] wrists and put them above [her] head to hold [her] down.” She continued to say that she did not want to have sex with him.
While holding her down, Appellant tried to unzip her pants. She was able to get a hand loose and pulled the zipper back up. He got both of her hands above her head again and, while he was clothed, he started to rub his erect penis over her vaginal area. He squeezed, kissed, and bit her breasts. When she told him not to bite her breasts, he stopped biting them. He rubbed his hand over her clothed crotch, put her legs over his shoulders, and again simulated having sex with her. She kept saying “ouch” because he was hurting her by squeezing her wrists and because of how he had her legs positioned. She kneed him, but was unsuccessful in dislodging him. Appellant was even begging her to have sex with him, even offering her marriage, children, money, and the opportunity to drive his ear. That caused them both to laugh.
After Appellant got off Petty Officer ED, he removed his penis from his pants, began stroking it with his hand, and asked for Petty Officer ED to “suck” it. She kept telling him “no” and told him if he came any closer she would bite off his penis. He laughed at that, put his penis back into his pants, zipped them up, and sat on the bed with her. She put her shirt back on. Appellant then exclaimed that he was amazed at how long it *104 took for her “no” to sink in. Appellant then left the room.
As part of the investigation into Appellant’s conduct, the Naval Criminal Investigative Service (NCIS) had Petty Officer ED make a telephone call to Appellant. During the call, Appellant explained his persistence in trying to have sex with Petty Officer ED as “ ’cause ah, sometime a guy gets desperate and do whatever they have to do to get laid.” When she suggested that he usually quits after the first couple of “no’s,” he stated:
Nah, I, I don’t like giving up on things. I, I, I, I try hard, I work hard on, on, on what I do and and when I want something, I fight for it. So, um, if it takes me a lot of no’s to finally realize that it’s not happening, then that’s what it’s going to take.
She then asked if he remembered her saying “ouch” a few times when he held her down. He said he did not. Later, after explaining that he never meant to bruise or hurt her, Appellant said:
Sometimes when I play, I get a little rough and sometimes girls tell me that I’m getting rough. You might have said ouch, but it might have been more like a seductively [sic] ouch.
There’s a lot of types of ouch. If you would have said that actually does hurt, I probably would have stopped.
When Appellant was interviewed by NCIS agents, he admitted that, during the forty-five to sixty minutes he was trying to have sex with Petty Officer ED, she told him “no” a lot. “She was getting frustrated and started to raise her voice at me as she said ‘No.’ ” Appellant “came to understand that she was not going to change her mind” and have sex with him.
After the parties rested, the defense counsel asked the military judge to give a mistake of fact instruction for the indecent assault specification at isstíe. The military judge questioned whether' mistake of fact as to consent was a defense, asserting that the only element requiring specific intent was the specific intent to gratify his sexual desires. The civilian defense counsel conferred with his military colleague and moved on to requesting a mistake of fact instruction as to indecent exposure and some of the lesser included offenses, which the military judge gave. Neither the parties nor the military judge further discussed the mistake of fact instruction as to the indecent assault offense, and the military judge did not give such an instruction.
An honest and reasonable mistake of fact as to consent is an affirmative defense to indecent assault. United States v. Peterson, 47 M.J. 231, 234-35 (C.A.A.F.1997). The military judge must give a mistake of fact instruction if the issue is reasonably raised by the evidence unless it is affirmatively waived. United States v. Gutierrez, 64 M.J. 374, 376 (C.A.A.F.2007). To warrant an instruction there must be some evidence that Appellant had “both a subjective belief of consent and a belief that was reasonable under all the circumstances.” Peterson, 47 M.J. at 234-35. “It is not necessary that the evidence which raises an issue be compelling or convincing beyond a reasonable doubt. Instead, the instructional duty arises whenever ‘some evidence’ is presented to which the fact finders might ‘attach credit if they so desire.” United States v. Taylor, 26 M.J. 127, 129-30 (C.M.A.1988) (quoting United States v. Simmelkjaer, 18 C.M.A. 406, 410, 40 C.M.R. 118, 122 (1969)); accord United States v. Hibbard, 58 M.J. 71, 72 (C.A.A.F. 2003). But “a mistake of fact instruction is not warranted where the evidence raises and the parties dispute only the question of actual consent.” United States v. Willis, 41 M.J. 435, 438 (C.A.A.F.1995).
The evidence did not raise mistake of fact as to the specification alleging the indecent assault of Petty Officer ED. Although some evidence of record suggests the reasonable possibility that Petty Officer ED was consenting to Appellant’s conduct, there was no evidence that Appellant actually believed the victim was consenting. United States v. Jones, 49 M.J. 85, 91 (C.A.A.F.1998). In fact, the evidence demonstrates the contrary — Appellant honestly believed she was not consenting but thought that if he persisted she might eventually give up and give in.
*105 Appellant relies on (1) statements he made during the pretext telephone call and (2) Petty Officer ED’s testimony to establish the need for a mistake of fact instruction. He points to the following statements he made during the pretext phone call to show the defense of mistake of fact was raised:
(a) “So, honestly I might not have really even done anything to you that hard to get a bruise on you.”
(b) “I didn’t do it in a mean way.... I was probably just playing with you. Sometimes when I play, I get a little rough and sometimes girls tell me that I’m getting rough. You might have said ouch, but it might have been more like a seductively [sic] ouch.”
(c) “I didn’t feel bad at the time, because I really didn’t know I left bruises on you....”
These statements are not evidence that Appellant believed Petty Officer ED consented to his advances. They merely tend to show that he did not intend to cause bruising or to hurt her.
Appellant asserts that Petty Officer ED sent him mixed messages about her willingness to have sex and that permitting him to engage in some sexual acts — such as removing her shirt, fondling and kissing her breasts — misled him into believing she would permit him to engage in others. The majority seems to find this argument persuasive. I do not.
This was a couple with a sexual history, and the sex had been by mutual consent. Petty Officer ED would consent to some acts but not others. When she said “no,” he stopped. Evidence that she willingly participated in some sexual conduct might be sufficient evidence to raise the objective prong of the mistake of fact defense, but there is no evidence “appellant actually or subjectively did infer consent based on these circumstances.” Willis, 41 M.J. at 438.
I dissent.