# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 20080**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Adam M. RODELA**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 21 December 2021[2]

———————————

*Military Judge*: Brian C. Mason.

*Sentence:* Sentence adjudged on 18 August 2020 by SpCM convened at Joint Base Langley-Eustis, Virginia. Sentence entered by military judge on 10 September 2020: Confinement for 12 months, reduction to E-1, and a reprimand.

*For Appellant:* Michael B. Hanzel, Esquire (argued); Major Jenna M. Arroyo, USAF.

*For Appellee*: Major Jessica L. Delaney, USAF (argued); Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge POSCH and Judge MEGINLEY joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

[1] Appellant appeals his conviction under Article 66(b)(1)(A), UCMJ, 10 U.S.C. § 866(b)(1)(A), having been sentenced to more than six months' confinement.

[2] The court heard oral argument in this case on 13 July 2021.

---

RICHARDSON, Judge:

A special court-martial comprised of a military judge convicted Appellant, contrary to his plea, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[3] The court-martial sentenced Appellant to confinement for 12 months, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the sentence, and denied Appellant's requests for deferment of reduction in grade[4] and waiver of automatic forfeitures.

On appeal, Appellant challenges the legal and factual sufficiency of his conviction. We specified the following issue in granting Appellant's motion for oral argument:

> Whether Appellant's conviction for abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920, is legally and factually insufficient because it was reasonable for Appellant to believe the complaining witness consented to Appellant's conduct by her response or lack thereof.

We answer that question in the negative. Finding no error that materially prejudiced Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

The salient facts of this case are not at issue. MS and Appellant were friends, having met at technical school before they both were assigned to Joint Base Eustis-Langley, Virginia. They became close friends, but did not have a sexual relationship. Appellant was engaged to another woman, with the wedding planned for mid-December 2019.

On 6 December 2019, MS and Appellant both attended a unit-sponsored holiday party. About an hour after MS left the party, Appellant contacted her. She was with Airman First Class (A1C) WG at the dorms on base. Appellant

---

[3] All references in this opinion to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[4] The convening authority did not state his reasons for his denial of Appellant's requested deferment. Appellant has not claimed prejudice, and we find none. *See United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992) (footnote omitted) (finding that the convening authority's decision "must include the reasons upon which the action is based" in order to facilitate judicial review), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018).

asked if they wanted to "hang out." They agreed, and MS and A1C WG went to Appellant's house.

A1C WG brought a bottle of rum he won at the holiday party. He served half a glass of rum each to MS and Appellant without a mixer or ice. Although MS had an upset stomach from the food at the holiday party, she drank the rum. She testified that after drinking the rum, she "felt really disoriented [and] really dizzy," and found it "hard to walk straight" and "hard to focus." After she finished the glass, she felt sick then went to Appellant's bedroom bathroom to vomit in the toilet. After a bout of vomiting, she sat on Appellant's bed. He asked her if she wanted to lay down. Instead, she went back to the bathroom and "was throwing up for a while."

Appellant positioned himself behind MS at the toilet as she was vomiting. MS testified about what happened next:

> I was throwing up for a while. And I remember at one point, I believe he was somewhere behind me. And he was like rubbing my back over my hoodie and so I was still like throwing up at this point. And so he rubbed my back for at least a minute or two, and then his hand ended up going under my jacket and my shirt to rub my back on my skin.

MS "thought nothing of it" because that was something "friends would do." MS testified that Appellant moved his hand from her back to her stomach, "still on the skin," and rubbed her there for about a minute. She continued, "I thought it was a little weird but I [was] still, you know, throwing up at the time, so I was kind of more focused on that."

MS described Appellant's next actions: "He ended up adding another hand and they kind of traveled up towards under my breasts, and he was kind of rubbing under my breasts for about a minute." Then Appellant's "hands moved to directly on my breast and [Appellant] was like massaging them." During this time, MS noted, her "face was still in the toilet bowl."

MS testified that Appellant moved his hand "down and he starting rubbing [MS's] pelvic area," specifically, the top of her genitalia where the two labia major meet. MS described how she felt:

> I had like this bad feeling but it's like at the same time I just -- I felt like I couldn't do anything about it. My -- at the time my head was still in the toilet bowl. I know my arm was on the toilet bowl [and] I was using that as a headrest and I was just kind of [lying] there and it felt like my entire like body weight was just rested on the toilet. It felt like, like it was so much effort to even just lift my head.

3

MS displayed no outward reaction to Appellant touching her back, stomach, breast, or vulva. MS agreed on cross-examination that she did not react any differently to Appellant touching her back or stomach, and that she did not speak or move upon Appellant touching her vulva.

MS testified she was okay with "[j]ust the back touching of course;" she did not state she consented to Appellant touching her stomach, breasts, or vulva.

Once or twice, after a bout of vomiting, MS noticed her sports bra was above her breasts and readjusted it. MS also remembered Appellant laughing and saying, "I get so horny when I'm drunk."

MS woke up the next morning, 7 December 2019, in Appellant's bed, with Appellant "spooning" her. Later that day, MS told A1C WG that Appellant had assaulted her. On 8 December 2019, MS reported the incident to the local Sexual Assault Prevention and Response office, then underwent a sexual assault forensic examination. Later that week, agents with the Air Force Office of Special Investigations (AFOSI) interviewed her. Afterwards, MS talked to Appellant about what happened in a pretext text communication coordinated by AFOSI. MS and Appellant had the following exchanges:

> MS: And like what do you remember
>
> Appellant: Not a whole bunch[.] I know that's not what you're looking for which I'm sorry about but I remember hugging you like a lot more then [sic] I should have[. K]inda just little bits[;] I spaced kinda hard
>
> . . .
>
> Appellant: But really I am sorry about invading your space like that
>
> MS: Right if you wanna consider putting your hands up my shirt and down my pants as just "invading my space" like that's not just invading my personal space that is literally putting your hands on me inappropriately without my consent. That's messed up and that will never be okay
>
> Appellant: that is not okay by any means
>
> MS: Like straight up how do you just not remember that[?]
>
> Appellant: I know this is going to sound like bull to you but I honestly do not know what to tell you
>
> MS: Then I'm done talking
>
> Appellant: Okay like honestly I'm sorry for everything and not having more to tell you I truly am

On 17 December 2019, AFOSI agents interviewed Appellant after the latter waived his rights under Article 31, UCMJ, 10 U.S.C. § 831. Appellant stated that he previously had sexual thoughts about MS, but had not intended to act on those thoughts. Appellant said that while they were on his bed, they "cuddled a little" and "were touchy" before MS returned to the bathroom to vomit. Appellant admitted to touching MS's breast and genital area with his hand in his bathroom, between bouts of her vomiting in the toilet.

The AFOSI agents asked Appellant to explain how MS's bra got raised above her breasts. Appellant stated he thought he "had a hand in" moving her bra up through their various physical interactions that evening. When asked whether he felt her bra move, Appellant was silent for several seconds. He then described pulling MS from behind by the front of her hoodie, and why he did so:

> I pulled her back once because, like, she was like cheek and mouth on, like, the toilet seat like where you put your butt. And I'm honestly like, I know that she's like, not in a good way but I also know that she doesn't want her face where I put my butt. . . . She was just like resting on the bowl, but I was like, that's really gross, like that was my only thought was that's really gross.

Appellant claimed his intent started out "innocent." Appellant admitted his thoughts turned to sexual interest in MS, and that his touching then migrated from MS's stomach to her "boob" and the "outer . . . lip" of her vulva. He stated he "felt guilt the whole time but [the] guilt got worse," and that guilt is why he stopped and did not touch her more. He stated that in addition to guilt he felt fear, explaining, "I was scared of myself because I thought about what I *was* doing and what I *had* done, and that also like, it's not who I wanted to be and it's not who I thought I was."[5] Appellant repeatedly told investigators he felt guilty and he knew he should not have been touching MS "in that way." As for why he felt guilty, Appellant did not identify his engagement to another woman or his now-broken friendship with MS.

In a written statement after his AFOSI interview, Appellant wrote:

> I sat with her[.] I rubbed her stomach to try and comfort her[. T]hat's what my intention was but alcohol mixed with the strong connection and bond I have with her made it lead to something else that I never intended[,] which was me touching the lower

---

[5] Similarly, Appellant stated, "I was scared of myself because I was like, you *did* something."

portion of her breast and very upper portion of her lower genita-
lia[. B]ased on what had happened that night mixed with alcohol
I think I got a wrong idea about everything.

He added that he "confused [their] connection and situation." Appellant did not directly state in his AFOSI interview or written statement that he thought he had MS's consent to touch her breast or vaginal area. Appellant's written statement and portions of his recorded oral statement were admitted into evidence at trial.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

As charged, the elements of the specification alleging abusive sexual contact in violation of Article 120, UCMJ, of which Appellant was convicted, include: (1) that Appellant committed sexual contact upon MS by touching MS's breast and vulva with his hand; (2) that Appellant did so without the consent of MS; and (3) that Appellant did so with the intent to gratify his sexual desire. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶¶ 60.b.(4)(d), 60.e.(4)(d). "Sexual contact" includes touching another person's vulva or breast with an intent to gratify the sexual desire of any person. *See*

*MCM*, pt. IV, ¶ 60.a.(g)(2). "The term 'consent' means a freely given agreement to the *conduct at issue* by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(A) (emphasis added). "All the surrounding circumstances are to be considered in determining whether a person gave consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(C).

"[I]t is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." Rule for Courts-Martial (R.C.M.) 916(j)(1). If the mistake goes to an element requiring general intent, it "must have existed in the mind of the accused and must have been reasonable under all the circumstances." *Id.* Therefore, an honest and reasonable mistake that the victim consented to the charged sexual contact is an affirmative defense to abusive sexual contact as it is to other sexual offenses. *See e.g.*, *United States v. Hibbard*, 58 M.J. 71, 72 (C.A.A.F. 2003) (as a defense to a charge of rape); *United States v. DiPaola*, 67 M.J. 98, 102 (C.A.A.F. 2008) (as a defense to a charge of indecent assault); *United States v. McDonald*, 78 M.J. 376, 379 (C.A.A.F. 2019) (as a defense to a charge of sexual assault). Once raised, the Government bears the burden to prove beyond a reasonable doubt that the defense does not exist. R.C.M. 916(b)(1); *see McDonald*, 78 M.J. at 379.

In considering whether the defense of mistake of fact as to consent was raised at trial, we "consider the totality of the circumstances at the time of the offense" and consider "whether the record contains some evidence of an honest and reasonable mistake to which the [factfinder] could have attached credit if they had so desired." *Hibbard*, 58 M.J. at 75 (citations omitted). While the quantity of evidence required is low, the record must contain evidence supporting both the subjective "honest" and the objective "reasonable" mistaken belief. *See Davis*, 76 M.J. at 230 ("[W]hile [the a]ppellant's statement may constitute a scintilla of evidence about his 'honest' belief,' . . . there is not an iota of evidence that such a belief was reasonable."); *see also United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995) ("The testimony relied on by appellant tended to show objective circumstances upon which a reasonable person might rely to infer consent. However, they provided no insight as to whether appellant actually or subjectively did infer consent based on these circumstances.") If a mistake is honest yet "patently unreasonable," the defense is unavailable to an appellant. *Davis*, 76 M.J. at 230.

In *McDonald*, the United States Court of Appeals for the Armed Forces (CAAF) analyzed the element of lack of consent to the offense of sexual assault by bodily harm in violation of Article 120(b)(1)(B), UCMJ. 78 M.J. at 377. The CAAF concluded:

> As a general intent offense, sexual assault by bodily harm has an implied mens rea that an accused intentionally committed the sexual act. No mens rea is required with regard to consent, however.
>
> This does not criminalize otherwise innocent conduct because only *consensual* sexual intercourse is innocent. The burden is on the actor to obtain consent, rather than the victim to manifest a lack of consent. [The a]ppellant's actions could only be considered innocent if he had formed a reasonable belief that he had obtained consent. The Government only needed to prove that he had not done so to eliminate the mistake of fact defense.

*Id.* at 381 (citation omitted). Similarly, the Government need not prove an appellant intended the alleged sexual contact to be without consent. *See United States v. Lee*, No. ACM 39531 (f rev), 2020 CCA LEXIS 61, at *21–22 (A.F. Ct. Crim. App. 26 Feb. 2020) (unpub. op.) (applying the mistake of fact as to consent analysis from *McDonald* to the offense of abusive sexual contact).

### 2. Analysis

Appellant asserts his conviction is not legally or factually sufficient because the Government did not disprove his mistake of fact as to consent beyond a reasonable doubt. He asserts the Government had the burden to show Appellant believed he touched MS without consent. Appellant's argument is essentially as follows: MS testified that she consented to Appellant rubbing her back; accordingly, Appellant reasonably believed he had consent to any progressive touching—and had a corresponding reasonable mistake of fact as to consent to progressive touching—unless and until MS "outwardly manifested" revocation of consent. For the reasons discussed below, we disagree with Appellant's assertions.

#### a. Question of Consent

In his assignment of error, Appellant states the issue under review as follows:

> When a complaining witness claims that he or she consented to *certain touching* but then claims he or she withdrew consent without outwardly manifesting the withdrawal of consent through words or actions or any other means, would a reasonable person (and did [Appellant]) have a mistake of fact as to consent?

(Emphasis added). Appellant suggests we answer this question in the affirmative, explaining, "Any reasonable person, who *knew* she was consenting to contact, would believe that consent continued unless she manifested in some way,

either physically or verbally, that she had changed her mind and was no longer consenting to being touched."[6] (Emphasis added). We disagree with that proposed answer in this case.

We understand Appellant's argument essentially to be that consent to arguably nonsexual contact must be extended to sexual contact when the victim fails to manifest a lack of consent to progressive touching.[7] Appellant's rigid construct fails to recognize that the specific facts of each case drive the analysis. "All the surrounding circumstances are to be considered in determining whether a person gave consent," *MCM*, pt. IV, ¶ 60.a.(g)(7)(C), while any ignorance or mistake of fact "must have existed in the mind of the accused and must have been reasonable *under all the circumstances*," R.C.M. 916(j)(1) (emphasis added).

The evidence does not show, nor does Appellant claim, that MS consented to Appellant touching her breast or vulva. Therefore she could not have "withdrawn" consent that had not been given. Additionally, if actual knowledge was the standard for mistake of fact, as Appellant suggests, Appellant has not identified evidence indicating he *actually knew at the time of the offense* that MS consented to him touching her back.[8] As Appellant correctly points out, MS's outward response to Appellant touching her back and other areas was consistent: MS had no reaction. While MS testified at trial she "was okay" with him touching her back, there is nothing in the record indicating she said anything of the sort to Appellant. In other words, only well after the fact did Appellant gain knowledge that she consented to him touching her back. Finally, the record contains no evidence that MS "changed her mind" about consenting to Appellant's contact.

Appellant's framed issue and answer also presume all reasonable mistakes are honest. Just because the actions of the other person may "tend[ ] to show objective circumstances upon which a reasonable person might rely to infer consent," to satisfy the "honest" prong they must provide "insight as to whether [the] appellant actually or subjectively did infer consent based on these circumstances." *United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995) (citation omitted). Thus Appellant's claim that "a reasonable person . . . would believe

---

[6] Appellant asserts both that he knew what MS was thinking when it came to consenting to a back rub, but also that he did not know when she "withdrew" consent for him to touch her at other places on her body. We agree with Appellant insofar as he notes that "[t]he reasonable person is not a mind reader."

[7] We need not reach the matter identified in Appellant's reply brief of whether a service member must obtain affirmative consent before each progressive act of sexual contact.

[8] We distinguish the concepts of what Appellant actually knew from what he might have believed, the latter of which we discuss in the context of an honest mistake.

consent continued" to progressive touching is no matter if the person did not actually believe they had obtained consent to the initial touching.

We decline to adopt Appellant's interpretation of consent to progressive touching in this case for several reasons. First, when Appellant began rubbing MS's back—the contact to which MS testified she consented—his action was non-sexual. MS did not perceive Appellant touching her back and stomach to be sexual in nature; indeed, those actions are not "sexual contacts" as defined in the current version of Article 120, UCMJ. *See MCM*, pt. IV, ¶ 60.a.(g)(2). Also, Appellant admitted he found MS resting her face on his toilet bowl "really gross," which supports his statement that his initial intent was only to comfort MS. A rational factfinder could conclude that MS consented to Appellant's non-sexual touching, but also conclude that such consent did not carry over to the sexual touching. Thus, we disagree with Appellant that the only rational conclusion is that MS's consent to him rubbing her back carried over to subsequent touching of her breast and vulva.

### b. Honest Mistake?

We find no convincing evidence in the record that Appellant honestly believed MS had given her consent for him to touch her breast and vulva. Appellant asserts that we should find such belief from statements Appellant had given to AFOSI agents about feeling guilt. We find no support in the record for Appellant's claim in his reply brief that his feelings of guilt were the result of him having "engaged in a consensual sexual interaction with MS, at a time when their inhibitions were lowered, and it was a mistake." Appellant may have had reasons for feeling guilt other than committing a sexual offense upon MS, but those reasons are not evident in our review of the evidence produced at trial.

During oral argument before this court, Appellant's counsel argued that because Appellant and MS were "best friends," Appellant could read her "signals" regarding consent to sexual activity. Appellant does not, however, specify what action by MS comprised such a "signal" beyond a lack of reaction, or the foundation for Appellant's ability to read his best friend's sexual signals.

Additionally, Appellant would have us infer that he believed MS was consenting because of what she could have done but did not do, including "lean away or resist" or "voice any objection to [Appellant's] advances." We decline to make such inference in this case, in part, because we are unconvinced MS was able to manifest resistance to Appellant's actions. MS's thoughts were distracted by her vomiting, and she felt "it was so much effort to even just lift [her] head" from the toilet bowl. We are similarly unpersuaded by Appellant's claim during oral argument that MS's "manifestation [of consent] was [that she had] not respond[ed] in a negative way." MS "not responding in a negative

way" or, to use a phrase in Article 120, UCMJ, 10 U.S.C. § 920(g)(7)(A), her "lack of verbal or physical resistance" does not constitute consent, and we will not infer from it alone that Appellant honestly believed he obtained MS's consent. *See also MCM*, pt. IV, ¶ 60.a.(g)(7)(A).

While not raised by Appellant on appeal, we also consider whether Appellant's pretrial statements to MS and AFOSI agents demonstrated an honest but mistaken belief that MS consented. Appellant said in his AFOSI interview that he knew what he was doing was wrong. Appellant repeatedly stated he felt guilt the whole time, and that guilt is why he did not "go higher" on her breast and why he only touched her "vagina" "lightly" and with "one finger."[9] In a written statement Appellant made after that interview, Appellant explained, "I think I got a wrong idea about everything," and, "I confused our connection and situation." But the record does not reveal what Appellant may have been wrong or confused about—perhaps it was whether MS consented to touching, or perhaps it was whether the law permitted him to touch his friend when she was unresponsive to his advances.

Although we are not convinced the record contains sufficient evidence to support the "honest" prong of the defense, we allow that a rational factfinder could attach credit to Appellant's statements if the factfinder so desired. *See Hibbard*, 58 M.J. at 75–77 (focusing on the "reasonable mistake prong," and finding the appellant's statement that "at least this was consensual" to be a "cursory parting remark" and, under the circumstances, insufficient to support a reasonable mistake). Therefore, we will review whether any arguably "honest" mistake would have been reasonable under the circumstances.

### c. Reasonable Mistake?

Appellant asserts his conviction for abusive sexual contact is legally and factually insufficient because his mistake of fact as to consent was reasonable in the absence of the victim manifesting a lack of consent to any of his touches. After summarizing two of this court's unpublished opinions and *United States v. Prasad*, 80 M.J. 23 (C.A.A.F. 2020), Appellant concludes, "If [that lack of consent] was not manifested clearly enough for a reasonable person to understand . . . there was a reasonable mistake of fact."

This position demonstrates a misunderstanding of the law. Just as a victim's "lack of verbal or physical resistance does not constitute consent," *MCM*, pt. IV, ¶ 60.a.(g)(7)(A), a victim's lack of verbal or physical resistance, without more, is not some evidence of a reasonable belief that consent has been obtained (or given). In both unpublished opinions Appellant cites, evidence that

---

[9] Appellant denied touching MS's "vagina" in his initial statements to the agents.

the victim manifested a lack of consent strengthened—but was not a prerequisite to—the conclusion that the appellant lacked an honest and reasonable mistake of fact as to consent. *See United States v. Brunson*, No. ACM 39698, 2020 CCA LEXIS 436, at \*13–17 (A.F. Ct. Crim. App. 2 Dec. 2020) (unpub. op.); *United States v. Crump*, No. ACM 39628, 2020 CCA LEXIS 405, at \*43–46 (A.F. Ct. Crim. App. 10 Nov. 2020) (unpub. op.), *rev. denied*, 81 M.J. 177 (C.A.A.F. 2021). In *Prasad*, 80 M.J. at 31, the appellant told the complainant he "thought [she was] being playful" and the complainant stated that once the appellant realized she was not consenting, he stopped. In the present case, however, it would be "patently unreasonable," *Davis*, 76 M.J. at 230, for Appellant to believe that MS consented to him touching her breast and vulva; the evidence indicates that MS merely endured Appellant touching her body while she vomited at his toilet, and did not manifest consent or a lack of consent to any of his touches. *Id.*

### d. Conclusion

A rational factfinder could have found all the essential elements of Appellant's convicted offense beyond a reasonable doubt, and further, could have found beyond a reasonable doubt that Appellant did not have a mistake of fact as to consent. Even if Appellant had an honest belief that MS consented to the sexual contacts, the Government provided overwhelming evidence that such a belief would have been unreasonable under the circumstances. Furthermore, in assessing factual sufficiency, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. Therefore, we find Appellant's conviction both legally and factually sufficient.

### III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court