# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40057 (f rev)

————————————

### UNITED STATES
*Appellee*

**v.**

### Won-Jun KIM
Cadet, U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 12 October 2022

————————————

*Military Judge:* Jennifer J. Raab; Dayle P. Percle (remand).

*Sentence:* Sentence adjudged on 20 November 2020 by GCM convened at United States Air Force Academy, Colorado. Sentence entered by military judge on 7 January 2021 and reentered on 21 June 2022: Dismissal and confinement for 45 days.

*For Appellant:* Lieutenant Colonel Garrett M. Condon, USAF; Major Kasey W. Hawkins, USAF; Major Alexander A. Navarro, USAF; Captain Thomas R. Govan, Jr., USAF.

*For Appellee:* Lieutenant Colonel Amanda L.K. Linares, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Allison R. Barbo, USAF; Major Alex B. Coberly, USAF; Major Abbigayle C. Hunter, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

―――――――――――

ANNEXSTAD, Judge:

A general court-martial consisting of a military judge convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*); and acquitted Appellant of one specification of assault, in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2016 *MCM*).[1] The military judge sentenced Appellant to a dismissal and confinement for 45 days.

Appellant's case is before this court a second time. Appellant originally raised five issues, which we reworded: (1) whether Appellant's conviction for abusive sexual contact is legally and factually sufficient; (2) whether Appellant's sentence is inappropriately severe; (3) whether Appellant is entitled to appropriate relief because he was not timely served with the victim's submission of matters or provided an opportunity to rebut the same prior to the convening authority signing the Decision on Action memorandum, in accordance with Rule for Courts-Martial (R.C.M.) 1106; (4) whether Appellant's court-martial was improperly referred; and (5) whether the military judge erred by denying Appellant's request to instruct the panel that a unanimous verdict was required to convict Appellant. With respect to issues (4) and (5), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).[2]

On 9 May 2022, we agreed with Appellant's third assignment of error and found that he was neither served a copy of the victim's submission of matters nor provided with an opportunity to rebut the matters. As a result, we remanded Appellant's case to the Chief Trial Judge, Air Force Trial Judiciary, for new post-trial processing. *United States v. Kim,* No. ACM 40057, 2022

―――――――――――

[1] Unless otherwise noted, all other references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Issues (4) and (5) were personally raised by Appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). With respect to issue (5), the court notes that Appellant filed a motion before the trial judge requesting an instruction that a unanimous verdict was required; that motion was denied. Three days before trial, Appellant signed a written request to be tried by military judge alone. We find this issue was waived, and therefore there is no error for this court to correct on appeal. *See United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005)).

LEXIS 276, at *8–9 (A.F. Ct. Crim. App. 9 May 2022) (unpub. op.). That error has been corrected, and we now turn our attention to Appellant's remaining two issues. Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

JM, the named victim in the case, entered the United States Air Force Academy (USAFA) as a cadet in the summer of 2017. She met Appellant later that same year when she joined a social club. The club consisted of over 100 cadets who gathered to eat, discuss common heritage, and socialize. While Appellant and JM were in the same club, they did not otherwise socialize with each other, and were not good friends or romantically involved with each other. In fact, JM testified that she never engaged in any in-person interactions with Appellant, nor did she express to others that she had a romantic interest in Appellant.

JM also met Cadet AH through the same club in 2017. By contrast with Appellant, JM and Cadet AH were close friends. JM and Cadet AH spent time together outside of the club and spoke to each other multiple times per week. Cadet AH also knew Appellant from classes, but did not socialize with Appellant and testified that he was "just an acquaintance."

On 28 April 2018, Cadet AH celebrated his birthday with a group of cadets at his uncle's vacation house near Denver, Colorado. JM, Appellant, Cadet AH, along with two other cadets from the club—Cadets AP and SC—drove to the vacation home, where they planned to spend the night. At that time, the two-story vacation home was between tenants, so while the water and electricity were working, the home was otherwise unfurnished. The cadets brought blankets and bedding to sleep on the floor.

They arrived at the house between 1800 and 1900 hours that evening, and Cadet AH made dinner for the group. While dinner was cooking, the cadets began consuming alcohol. JM had one can of beer while dinner was being prepared. She testified that she had never consumed alcohol prior to that night. The group finished dinner around 2200 and started playing drinking games in the living room within the hour. JM stated that she consumed at least five cups of vodka mixed with juice. JM explained her face turned red, she was slurring her words, and she felt dizzy due to her alcohol consumption. The alcohol eventually began to make her feel sick, and she vomited in the bathroom. After vomiting, JM brushed her teeth, returned to the living room where the rest of the group was still located, and announced that she was going to sleep. At that time, Cadets SC and AP also decided to go to sleep. They laid their bedding along one side of the living room wall and JM laid down along the opposite wall. She covered up with an electric blanket she brought with her and used

her jacket as a pillow. JM testified that she wore sweatpants and a shirt to bed. Cadet AH and Appellant were still drinking together in the middle of the living room when the others laid down to sleep.

JM stated that she fell asleep along the living room wall, positioned slightly on her right side with her back against the living room wall. She also stated that her head was near the entrance of the bathroom. She described drifting in and out of sleep and noticed over time that Cadet AH and Appellant were moving closer to where she was sleeping. Eventually they wound up sitting on the floor right next to her, and that Appellant was leaning with his back against her upper torso as she was laying on the floor. JM remembered Cadet AH had draped his sleeping bag on top of the electric blanket she already had on her.

JM's next memory was being awakened by a warm sensation moving against her right hand in a stroking movement. She explained that she had fallen asleep on her side with both her arms under the blanket and sleeping bag, and that she awoke with her right arm stretched out near her "upper head area" and outside of her bedding. She stated when she woke up, Appellant was using her right hand to touch his penis. She described her hand was limp and that Appellant "was just like patting himself, kind of like rubbing himself on [her] hand." She also confirmed that she did not consent to this touching and was not actively participating. She further explained Appellant moved her hand to touch his semi-erect penis, and that he had moved both her hand and his body to achieve a stroking motion. JM tried to rouse herself to resist Appellant, but was groggy from the alcohol and having been asleep. JM stated she did not talk to Appellant while this was happening, and that eventually Appellant just got up and walked away, and she drifted back to sleep. Appellant went upstairs and slept on the floor of a second-story bedroom.

JM was awakened again, but this time she woke up to Cadet AH using her hand to touch his face. Cadet AH then kissed her hand, cheek and lips, touched her breast and stomach, and attempted to move his hand under the waistband of her pants to touch her genital area. JM stated she was eventually able to get up, at which point she went to the bathroom upstairs to collect her thoughts. When JM arrived upstairs she saw Appellant laying on the floor of the bedroom looking at his phone, but did not respond to his greeting. JM stated she sat alone in the bathroom and called her mother, who was in Korea, so she could hear her mother's voice. JM then went back downstairs to the living room, thought about what she should do, and eventually fell back asleep.

The next day the group drove back to the USAFA and upon returning to her dorm room, JM immediately told her roommate what happened. JM's description of what she told her roommate was consistent with her testimony at trial concerning the version of events and what she experienced. Specifically,

she told her roommate that Appellant touched his penis with her hand without her consent.[3] While JM was having this conversation with her roommate, she was also preparing separate text messages to both Appellant and Cadet AH regarding their conduct the night before. Appellant responded to JM's confrontational text message by apologizing and expressing regret for his actions as follows:

> [JM]: Hey, I thought about not saying anything, but I vaguely remember what happened last night and it wasn't right. Don't do it again or you will no longer have a dick, thanks.

> [Appellant]: I'm seriously sorry. It won't happen again. That was really wrong of me. I really regretted doing it afterwards. I don't know what I was thinking. Could you please forgive me?

> [JM]: You are still my friend and I'm going to pretend it didn't happen, don't do it again[.]

> [Appellant]: I'm so sorry. I really wasnt [sic] thinking straight. It's really not how I approach girls. I'm so sorry for disrespecting you.

> [Appellant]: Idk what to do. Im [sic] sincerely sorry. Could we call for a moment?

> [Appellant]: I also have a question.

> [JM]: What[?]

This conversation was the first time that JM and Appellant had directly exchanged text messages with each other. Appellant then called JM and they spoke for approximately 20 minutes. JM testified Appellant told her during the phone call that she had touched his arm and therefore was to blame for the sexual contact that followed. JM stated she perceived the conversation as an attempt by Appellant to intimidate her and keep her from reporting the incident. When JM told Appellant that she did not plan to "do anything" about his conduct, she stated his tone changed from angry, aggressive, and panicked to relieved. JM also testified Appellant did not express any confusion about JM's allegations against him at any point during their conversation. Appellant and JM never spoke with each other again.

Cadet AH also reacted to the confrontational text message he received from JM. Cadet AH told JM that he felt guilty and asked if they could meet face-to-face so he could apologize. JM testified she met Cadet AH shortly thereafter

---

[3] JM's statement to her roommate was admitted by the military judge as a prior consistent statement.

and Cadet AH tearfully apologized for his actions. During their conversation, JM mentioned that Appellant had done something similar to her the same night. Cadet AH testified JM told him that she had confronted Appellant and told him that if he ever did something similar again, she would "chop his penis off."

In January 2019, JM reported the assaults. Subsequently, a military judge found Appellant guilty of one specification of abusive sexual contact.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant contends his conviction for abusive sexual contact is both legally and factually insufficient. Specifically, Appellant contends there was insufficient evidence Appellant caused JM's hand to touch his genitalia or that the touching was done without her consent. Additionally, Appellant argues he had a defense of reasonable mistake of fact as to her consent. Finally, Appellant takes issue with JM's credibility. Appellant asks us to set aside the findings and sentence. We disagree with Appellant's contentions and find no relief is warranted.

#### 1. Additional Background

Prior to Appellant's trial, Cadet AH pleaded guilty and was convicted by court-martial of assaulting JM. He was sentenced to 12 months' confinement and a dismissal from the Air Force.[4] Cadet AH later testified at Appellant's trial and confirmed, under oath, that when JM confronted him about the events of 28 April 2018, everything she claimed that he had done to her was true. Cadet AH also opined that JM was a truthful person. Additionally, Cadet AH provided testimony concerning Appellant's interactions with JM on the night in issue.

Cadet AH's recollection of the night closely paralleled that of JM's. Specifically, he stated that he made dinner for everyone while the others started drinking alcohol once the group arrived at his uncle's vacation house. After dinner, the group played drinking games on a cardboard box in the otherwise empty living room. He opined Appellant did not appear intoxicated, despite having been drinking alcohol. Cadet AH clearly recalled JM getting sick from consuming too much alcohol and vomiting in the bathroom. He remembered the birthday celebration started to wind down after she got sick. According to Cadet AH, JM went to sleep on the living room floor opposite from Cadet AP

---

[4] Cadet AH's sentence to confinement was reduced to eight months pursuant to a pretrial agreement.

and Cadet SC. Cadet AH also recalled JM was laying on her side with her back facing the wall. He confirmed JM was cold and that he draped his unzipped sleeping bag over the top of her to help her stay warm at some point. After JM fell asleep, Cadet AH witnessed Appellant laying down on the floor next to JM. He described Appellant as laying on his stomach in a slanted direction between JM and the bathroom door. Cadet AH then drew a diagram of everyone's position in the room, and that diagram was admitted at trial. The diagram's depiction matched JM's testimony concerning the group's location within the house.

Cadet AH testified he remained in the middle of the living room looking at his phone, but that he occasionally glanced over where Appellant and JM were laying. Cadet AH testified that he saw Appellant quickly pull his hand out from under JM's sleeping bag two to three times. He also testified JM appeared to be sleeping while this was happening, he did not see her respond at all, and did not hear Appellant say anything to JM. Cadet AH testified that he did not stop Appellant because he was "very intoxicated" and that he only remembered bits and pieces from that night. Cadet AH saw Appellant get up and leave the room, and confirmed that Appellant slept in a bedroom on the second floor.

### 2. Law

Issues of legal and factual sufficiency are reviewed de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "Our assessment of legal and factual sufficiency is limited to evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)), *rev. denied*, No. 22-0111, 2022 CAAF LEXIS 278 (C.A.A.F. 12 Apr. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted), *cert. denied*, 139 S. Ct. 1641 (2019). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Unites States v.*

*Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

Appellant was convicted of abusive sexual contact in violation of Article 120, UCMJ, which required the Government to prove three elements beyond a reasonable doubt: (1) Appellant committed a sexual act upon JM by causing her to touch his genitalia through his clothing with her hand; (2) that he did so by causing bodily harm to JM (nonconsensual sexual contact); and (3) that he did so with the intent to gratify his sexual desire. *See* 2016 *MCM*, pt. IV, ¶¶ 45.a.(g)(3), 45.b.(7)(b).

If shown by some evidence, mistake of fact as to consent is a defense to abusive sexual contact. *See* R.C.M. 916(j)(1); *Rodela*, 82 M.J. at 526 (citations omitted). It requires that an appellant, due to ignorance or mistake, incorrectly believed that another consented to the sexual conduct. *See id.* To be a viable defense, the mistake of fact must have been honest and reasonable under all the circumstances. *See United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998) (quoting *United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995)); *Rodela*, 82 M.J. at 526.

### 3. Analysis

During Appellant's court-martial, the Government introduced convincing evidence of Appellant's guilt. Most significant was the testimony of JM who described with clarity how Appellant placed her hand on his penis without her consent. She further described how Appellant moved her limp hand and his body to achieve a stroking motion on his penis. We find that JM's testimony was credible and is sufficient, without additional evidence, to support the charged offense. As an evidentiary standard, proof beyond a reasonable doubt does not require more than one witness to credibly testify. *See United States v. Rodriguez-Rivera,* 63 M.J. 372, 383 (C.A.A.F. 2006) (holding the testimony of a single witness may satisfy the Government's burden to prove every element of a charged offense beyond a reasonable doubt). That said, the Government also presented the text message exchange where JM confronted Appellant,

during which Appellant apologized for his actions and asked for JM's forgiveness. Finally, we find the testimony of Cadet AH compelling. While we acknowledge that Cadet AH did not see Appellant place JM's hand on his penis, his testimony corroborated JM's testimony about the events on the night in issue. Furthermore, Cadet AH acknowledged his own criminal behavior, and admitted that her allegations against him were accurate. Finally, Cadet AH offered his opinion that JM was a truthful person.

The crux of Appellant's argument at trial and on appeal is that his conviction is legally and factually insufficient because JM is not credible, which Appellant asserts is supported by evidence in the record. Specifically, he directs our attention to JM's testimony where she admitted to a previous false statement concerning an academic integrity violation. Our review of the record indicates that JM was asked about this event during her testimony and admitted she made a false statement, while explaining its context. We are not persuaded this one event creates reasonable doubt as to the veracity of her testimony. As discussed above, we find there was also compelling circumstantial evidence in support of her testimony.

We also find that there was sufficient evidence to prove that Appellant did not have a reasonable mistake of fact as to consent. Again, JM's testimony and Appellant's own words were enough to overcome this defense. Appellant's argument on appeal is that JM touched his arm and that this reasonably led to his mistaken belief that JM consented to him stroking his penis with her hand. We do not find it reasonable for Appellant to assume, that even if she had touched his arm, that in any way could be interpreted as JM consenting to him stroking his penis with her hand. Moreover, the fact that Appellant retreated upstairs as soon as JM started to rouse belies his later statement to JM that he believed she consented.

We conclude that, viewing the evidence produced at trial in the light most favorable to the Prosecution, a rational trier of fact could have found the essential elements of abusive sexual contact beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. Furthermore, after weighing all the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Reed*, 54 M.J. at 41 (quoting *Turner*, 25 M.J. at 325).

## B. Sentence Severity

Appellant contends his sentence is inappropriately severe. He asks that we set aside the dismissal and approve a sentence no greater than 45 days' confinement. We are not persuaded Appellant's sentence is inappropriately severe and find no relief is warranted.

"We review sentence appropriateness de novo." *United States v. Datavs*, 70 M.J. 595, 604 (A.F. Ct. Crim. App. 2011) (citing *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005)), *aff'd*, 71 M.J. 420 (C.A.A.F. 2012). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have discretion in determining whether a sentence is appropriate, we are not authorized to engage in exercises of clemency. *See United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

We have conducted a thorough review of Appellant's entire court-martial record, including his record of service, and find that the nature and seriousness of the offense clearly supports the adjudged sentence of a dismissal and 45 days of confinement. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(d), UCMJ, 10 U.S.C. § 866(d), we conclude the sentence is not inappropriately severe and we affirm the sentence adjudged.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court